No. 21-3830

_____

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

_____

**UNITED STATES,**
**Plaintiff-Appellee,**

**v.**

**PATRICK WEBB, JR.,**
**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Northern District of Iowa**
**Case No. 2:20-CR-01018-001**

_____

**APPELLANT'S BRIEF**

_____

**Murdoch Walker, II. Esq.**
**Ga. Bar No. 163417**
**Bingzi Hu, Esq.**
**Ga. Bar No. 455315**

**Lowther | Walker LLC**
**101 Marietta St., NW, Ste. 3325**
**Atlanta, GA 30303**
**404.496.4052**
**www.lowtherwalker.com**

**Attorneys for Patrick Webb, Jr**

## SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT

Mr. Webb appeals from his convictions and sentence on the following grounds. First, the trial court failed to instruct the jury the essential Protected Location Element of the 21 U.S.C. § 860 violation charged in Count 1, thus gravely violating his constitutional rights to due process and a fair trial. Second, Mr. Webb was denied of a complete entrapment defense due to operation of the erroneous jury instructions. The evidence is clear that Mr. Webb was not disposed to conduct the drug deal near a protected location. But the court failed to instruct the jury that the entrapment defense should also go to the Protected Location Element because this element was completely omitted by the court. Third, trial counsel was ineffective for failing to object to the erroneous jury instructions. Fourth, Mr. Webb's sentence is procedurally and substantively unreasonable.

Mr. Webb respectfully submits that the facts and legal arguments are adequately presented in the briefs and record and that the decisional process would not be significantly aided by oral argument, and, therefore, does not request oral argument.

i

# TABLE OF CONTENTS

SUMMARY AND STATEMENT REGARDING ORAL ARGUMENT .......i

TABLE OF CONTENTS ...............................................................ii

TABLE OF AUTHORITIES ..........................................................

JURISDICTIONAL STATEMENT..................................................1

STATEMENT OF ISSUES..............................................................1

STATEMENT OF THE CASE ........................................................3

SUMMARY OF THE ARGUMENT ...............................................4

ARGUMENT ...............................................................................6

    I.   The District Court Failed to Instruct the Jury on an Essential Element of the Charged Offense ............................................................6

        i.   Legal Framework ...................................................6

        ii.   The erroneous jury instructions constructively amended the indictment and denied Mr. Webb's of his constitutional rights to due process, to indictment by a grand jury, and to a fair trial ...7

    II.  Mr. Webb Was Denied of a Complete Defense of Entrapment Due to Operation of the Erroneous Jury Instructions ....................................12

        i.   Legal Framework ...................................................12

        ii.   Mr. Webb was not disposed to conduct the drug deal near a protected location ....................................14

        iii.   The erroneous jury instruction denied Mr. Webb of a complete entrapment defense specifically as to the Protected Location Element ....................................15

    III.  Mr. Webb's Trial Counsel Was Ineffective .........................................17

    IV.  Mr. Webb's Sentence Is Procedurally and Substantively Unreasonable

Appellate Case: 21-3830    Page: 3    Date Filed: 03/16/2022 Entry ID: 5137120

.................................................................................19

    i.   Legal Framework ...................................................................19

    ii.  The District Court Abused Its Discretion in Applying the Career Offender Enhancement ............................................................20

    iii. The District Court Abused Its Discretion in Regarding the Guidelines' 10:1 Methamphetamine Ratio as Mandatory ........23

    iv.  Sentence Greater than Necessary ..........................................27

CONCLUSION .............................................................................29

CERTIFICATE OF COMPLIANCE ...............................................31

CERTIFICATE OF SERVICE.........................................................32

Appellate Case: 21-3830    Page: 4    Date Filed: 03/16/2022 Entry ID: 5137120

# TABLE OF AUTHORITIES

**Constitution**

U.S. Const. amend. VI.................................................................2, 10


**Statutes**

18 U.S.C. § 3231 ........................................................................1

28 U.S.C. § 1291 ........................................................................1

21 U.S.C. § 860 ...................................................................1, 3, 4, 7

Iowa Code § 124.401..........................................................2, 20, 21

18 U.S.C. § 3553 .............................................................2, 19, 28

21 U.S.C. § 841 ......................................................................3, 7

21 U.S.C. § 851 ......................................................................3, 7

18 U.S.C. § 924 ......................................................................3, 7

18 U.S.C. § 922 .......................................................................3


**Cases**

*United States v. Hiscott*, 586 F.2d 1271 (8th Cir. 1978)...............................1, 6

*United States v. Gonzalez-Rodriguez*, 239 F.3d 948 (8th Cir. 2001)............1, 8

*United States v. Lard*, 734 F.2d 1290 (8th Cir. 1984)..............................1, 12, 13

*Strickland v. Washington*, 466 U.S. 668 (1984)..........................................2, 18

*Gall v. United States*, 552 U.S. 38 (2007) ..................................................2, 19

*United States v. Sanchez-Garcia*, 642 F.3d 658 (8th Cir. 2011) ..............2, 22, 23

Appellate Case: 21-3830   Page: 5   Date Filed: 03/16/2022 Entry ID: 5137120

*United States v. Nawanna*, 321 F.Supp.3d 943 (N.D. Iowa, 2018) ............2, 25

*United States v. Harry*, 313 F.Supp.3d 969 (N.D. Iowa, 2018)...............2, 25, 26

*United States v. Stuckey*, 220 F.3d 976 (8th Cir. 2000) .................................6

*United States v. Gill*, 513 F.3d 836 (8th Cir. 2008) .....................................6, 10

*United States v. Barrios–Perez*, 317 F.3d 777 (8th Cir. 2003) ....................6, 9

*United States v. Begnaud*, 783 F.2d 144 (8th Cir.1986) ...............................6

*In re Winship*, 397 U.S. 358 (1970)............................................................6

*United States v. Brown*, 478 F.3d 926 (8th Cir. 2007) ...................................7

*Rose v. Clark*, 478 U.S. 570 (1986)............................................................7

*United States v. Kakatin*, 214 F.3d 1049 (9th Cir. 2000)...............................8

*United States v. Anderson*, 200 F.3d 1344 (11th Cir. 2000) .........................8

*United States v. Chandler*, 125 F.3d 892 (5th Cir.1997) ...............................8

*United States v. McQuilkin*, 78 F.3d 105 (3d Cir. 1996)................................8

*United States v. Johnson*, 46 F.3d 1166 (D.C.Cir.1995)................................8

*United States v. Parker*, 30 F.3d 542 (4th Cir. 1994) ....................................8

*United States v. Smith*, 13 F.3d 380 (10th Cir. 1993) ....................................6

*United States v. Young*, 613 F.3d 735 (8th Cir. 2010)...................................12

*United States v. Williams*, 109 F.3d 502 (8th Cir.1997) ...............................12

*United States v. Hulett*, 22 F.3d 779 (8th Cir.1994) ....................................12

*United States v. Warren*, 788 F.3d 805 (8th Cir. 2015).................................12

*United States v. Coleman*, 284 F.3d 892 (8th Cir. 2002) ..............................12

Appellate Case: 21-3830    Page: 6    Date Filed: 03/16/2022 Entry ID: 5137120

*United States v. Berg*, 178 F.3d 976 (8th Cir.1999) .......................................12

*United States v. Eldeeb*, 20 F.3d 841 (8th Cir.1994) ...................................12

*Casey v. United States*, 276 U.S. 413 (1928) ................................................13

*Sherman v. United States*, 356 U.S. 369 (1958) ...........................................13

*Jacobson v. United States*, 503 U.S. 540 (1992) ...........................................13

*Laws v. Armontrout*, 863 F.2d 1377 (8th Cir.1988) ......................................17

*McMann v. Richardson*, 397 U.S. 759 (1970) ...............................................17

*United States v. Watson*, 480 F.3d 1175 (8th Cir. 2007) ...............................19

*Kimbrough v. United States*, 552 U.S. 85 (2007) ......................................20, 28

*United States v. Bolden*, 596 F.3d 976 (8th Cir. 2010) .................................20

*United States v. Milk*, 447 F.3d 593 (8th Cir. 2006) .....................................20

*United States v. Boleyn*, 929 F.3d 932 (8th Cir. 2019) .................................21

*United States v. Henderson*, 11 F.4th 713 (8th Cir. 2021) .........................21, 22

*United States v. Townsend*, 897 F.3d 66 (2d Cir. 2018) ................................21

*United States v. Leal-Vega*, 680 F.3d 1160 (9th Cir. 2012) ...........................22

*United States v. Gomez-Alvarez*, 781 F.3d 787 (5th Cir. 2015) .....................22

*Marks v. United States*, 430 U.S. 188 (1977) ................................................22

*Bouie v. City of Columbia*, 378 U.S. 347 (1964) ...........................................22

*United States v. Beals*, 698 F.3d 248 (6th Cir. 2012) ....................................22

*In re Winship*, 397 U.S. 358 (1970) ..............................................................22

*United States v. Meyer*, 2021 WL 2482542 (D. Idaho. June 17, 2021) .........24

*United States v. Booker*, 543 U.S. 220 (2005) ..............................................26

vi

Appellate Case: 21-3830     Page: 7     Date Filed: 03/16/2022 Entry ID: 5137120

*United States v. Toothman*, 543 F.3d 967 (8th Cir. 2008)..............................26

*United States v. Smith*, 983 F.3d 1006 (8th Cir. 2020) .................................26

*United States v. Williams*, 755 Fed.Appx. 926 (11th Cir. 2018)....................26

## Federal Sentencing Guidelines

USSG § 4B1.2 ...........................................................................2, 20, 21

USSG § 2D1.1 ............................................................................2, 3, 24

USSG § 4B1.1 .................................................................................20

## Other

C. Wright, *Federal Practice & Procedure, Criminal* .....................................6

Appellate Case: 21-3830    Page: 8    Date Filed: 03/16/2022 Entry ID: 5137120

# JURISDICTIONAL STATEMENT

The district court had jurisdiction over this criminal matter under 18 U.S.C. § 3231. This Court has appellate jurisdiction over this appeal of a final judgment under 28 U.S.C. § 1291. The district court entered the Judgment in this matter on December 6, 2021. R. Doc. 110, at 1-7. Mr. Webb timely filed his Notice of Appeal on December 10, 2021. R. Doc. 112, at 1-2.

# STATEMENT OF ISSUES

1. Whether the district court's failure to instruct the jury an essential element of the charged offense constructively amended the indictment and denied Mr. Webb's of his constitutional rights to due process, to indictment by a grand jury, and to a fair trial?

   **Apposite statutes:**

   21 U.S.C. § 860

   **Apposite cases**:

   *United States v. Hiscott*, 586 F.2d 1271 (8th Cir. 1978)

   *United States v. Gonzalez-Rodriguez*, 239 F.3d 948 (8th Cir. 2001)

2. Whether Mr. Webb was convicted under 21 U.S.C. § 860(a) as a result of entrapment due to operation of the erroneous jury instructions?

   **Apposite statutes:**

   21 U.S.C. § 860

   **Apposite case:**

   *United States v. Lard*, 734 F.2d 1290 (8th Cir. 1984)

1

3. Whether Mr. Webb's trial counsel was ineffective for failing to object to the district court's erroneous jury instructions?

   **Apposite statutes:**

   U.S. Const. amend. VI

   **Apposite case:**

   *Strickland v. Washington*, 466 U.S. 668 (1984)

4. Whether Mr. Webb's sentence is procedurally and substantively unreasonable?

   **Apposite statutes:**

   Iowa Code § 124.401

   USSG § 4B1.2

   USSG § 2D1.1

   18 U.S.C. § 3553

   **Apposite cases:**

   *United States v. Henderson*, 11 F.4th 713 (8th Cir. 2021)

   *United States v. Sanchez-Garcia*, 642 F.3d 658 (8th Cir. 2011)

   *United States v. Nawanna*, 321 F.Supp.3d 943 (N.D. Iowa, 2018)

   *United States v. Harry*, 313 F.Supp.3d 969 (N.D. Iowa, 2018)

Appellate Case: 21-3830    Page: 10    Date Filed: 03/16/2022 Entry ID: 5137120

On June 16, 2020, a federal Grand Jury returned an Indictment against Mr. Webb, charging him with one count of distribution of a controlled substance near a protected location in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 851, and 860(a) (Count 1), one count of possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 2), and one count of possession of a firearm by a prohibited person in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2) (Count 3). R. Doc. 2, at 1-3.

The charges stem from the allegations that, on December 12, 2019, Mr. Webb engaged in a controlled purchase of methamphetamine with Mr. Josh Walker in Dubuque, Iowa, which occurred at a Hy-Vee parking lot within 1,000 feet of Cleveland Park. R. Doc. 2, at 1-3; PSR, p. 6.

Following a jury trial, Mr. Webb was convicted of all three Counts. R. Doc. 76, at 1-7.

On September 10, 2021, the Probation filed the Pre-Sentence Report, recommending the following: Mr. Webb's base offense level is thirty-two under USSG § 2D1.1(c)(4), increased by two levels under USSG § 2D1.2(a)(1) based on the proximity to a protected location, rendering his adjusted offense level thirty-four. PSR, p. 9. Mr. Webb's criminal records establishes a criminal history category of V. PSR, p. 14. The Probation then increased the total offense level to thirty-seven, and the criminal history category to VI, with the applicable of career offender provision, resulting in a guideline range of 360 months to life.

PSR, p. 9, 14, 23. Adding the statutory mandatory consecutive sixty months'
imprisonment imposed under Count 2 to the guideline range, the Probation
concluded that Mr. Webb's applicable guideline range is 420 months to life.
PSR, p. 23.

On December 6, 2021, the district court sentenced Mr. Webb to 380
months' imprisonment, including 380 months on Counts 1 and 3 to be served
concurrently, and sixty months on Count 2 to be served consecutively. R. Doc.
110, at 1-7.

On December 10, 2021, Mr. Webb timely filed his Notice of Appeal. R.
Doc. 112, at 1-2. Other facts and procedural points will be developed as
necessary within the arguments.

## SUMMARY OF THE ARGUMENT

First, the district court failed to instruct the jury on an essential "protected
location element" of the 21 U.S.C. § 860 violation charged in count 1. it is well
established that § 860 requires the separate and distinct element of distribution
within 1000 feet of a protected location. by completely omitting this essential
element, the erroneous jury instructions constructively amended the indictment
and denied Mr. Webb's of his constitutional rights to due process, to indictment
by a grand jury, and to a fair trial.

Second, Mr. Webb was denied of a complete entrapment defense due to
operation of the erroneous jury instructions. The evidence is clear that Mr. Webb
was not disposed to conduct the drug deal near a protected location. Rather, law

Appellate Case: 21-3830    Page: 12    Date Filed: 03/16/2022 Entry ID: 5137120

enforcement carefully designed to arrange the controlled purchase at the place near a protected location. While the district court correctly decided to instruct the jury on entrapment together with the elements of the charged offenses, it failed to instruct the jury that the entrapment defense should also go to the Protected Location Element. Such a failure eliminated any opportunity for the jury to consider whether Mr. Webb was entrapped specifically as to the location of the controlled purchase.

Third, trial counsel was constitutionally ineffective for failing to object to the the court's erroneous jury instructions. Had counsel objected, the court could have conducted the jury instructions properly, and the outcome of the trial could have been different.

Fourth, Mr. Webb's sentence is procedurally and substantively unreasonable, because the district court abused its discretion in applying the career offender enhancement and in regarding the Guidelines' 10:1 methamphetamine ratio as mandatory. And his sentence is greater than necessary.

**ARGUMENT**

## I. The District Court Failed to Instruct the Jury on an Essential Element of the Charged Offense.

### i. Legal Framework

Generally, when evaluating jury instructions, this Court reviews for abuse of discretion. *United States v. Stuckey*, 220 F.3d 976, 979 (8th Cir. 2000). However, when the jury instructions constructively amended the indictment, a different standard is required. *United States v. Gill*, 513 F.3d 836, 849 (8th Cir. 2008). This court has repeatedly stated that constructive amendments are *per se* prejudicial and constitute reversible error. *See United States v. Barrios–Perez*, 317 F.3d 777, 779 (8th Cir. 2003) ("Constructive amendment of an indictment constitutes reversible error...."); *Stuckey*, 220 F.3d at 981 ("A constructive amendment is reversible error per se...."); *United States v. Begnaud*, 783 F.2d 144, 147 n. 4 (8th Cir.1986) (noting that an actual or constructive amendment of an indictment is "reversible error *per se*").

"[A] federal trial judge in instructing a jury in a criminal case is required to define accurately the essential elements of the offense charged, and a failure on the part of the trial judge to do so is 'grave error.' " *United States v. Hiscott*, 586 F.2d 1271 (8th Cir. 1978), quoting C. Wright, *Federal Practice & Procedure, Criminal*, s 487, p. 300.

Due Process Clause requires the prosecution in criminal cases to prove guilt beyond a reasonable doubt. *In re Winship*, 397 U.S. 358 (1970). Jury instructions must "adequately apprise the jury of the ... burden of proof required

6

of the government." *United States v. Brown*, 478 F.3d 926, 928 (8th Cir. 2007).

"When a jury has not been properly instructed concerning an essential element of the offense that has been charged, the danger exists that the defendant has been deprived of his Sixth . . . Amendment right [to fair trial] to have the jury determine whether the [prosecution] has proved each element of the offense beyond a reasonable doubt." *Rose v. Clark*, 478 U.S. 570, 595-96 (1986).

ii. **The erroneous jury instructions constructively amended the indictment and denied Mr. Webb's of his constitutional rights to due process, to indictment by a grand jury, and to a fair trial.**

Here, under Count 1 Mr. Webb was charged with distribution of a controlled substance near a protected location in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 851, and 860(a). R. Doc. 2, at 1-2. In the district court's Judgment, it further clarified that Mr. Webb was convicted under Count 1 of "Distribution of a Controlled Substance Near a Protected Location," as opposed to a regular distribution of controlled substance in violation of 21 U.S.C. § 841(a)(1) only. R. Doc. 110, at 1. Moreover, the offense charged in Count 2, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), is predicated on Count 1. R. Doc. 2, at 2.

As to the elements of a 21 U.S.C. § 860 violation, this Court has made it clear that, "[d]espite § 860's reference to § 841, § 860 requires ***the separate and distinct element*** of possession with intent to distribute within 1000 feet of a school. Thus, in order to obtain a conviction under § 860, possession with intent to distribute within 1000 feet of a school must be charged and proven by the

7

government beyond a reasonable doubt." *United States v. Gonzalez-Rodriguez*, 239 F.3d 948, 953 (8th Cir. 2001)(emphasis added). Indeed, federal courts of appeals have consistently held that § 860 is ***a separate offense*** that requires proof of an element that is ***not included in § 841***. *See, e.g., Gonzalez-Rodriguez*, 239 F.3d at 953; *United States v. Kakatin*, 214 F.3d 1049, 1052 (9th Cir. 2000); *United States v. Anderson*, 200 F.3d 1344, 1347 (11th Cir.2000); *United States v. Chandler*, 125 F.3d 892, 896 (5th Cir.1997); *United States v. McQuilkin*, 78 F.3d 105, 109 (3d Cir. 1996); *United States v. Johnson*, 46 F.3d 1166, 1169 (D.C.Cir.1995); *United States v. Parker*, 30 F.3d 542, 553 (4th Cir. 1994); *United States v. Smith*, 13 F.3d 380, 382 (10th Cir. 1993).

However, when charging the jury on the elements of the offense charged in Count 1, the district court completely failed to instruct as to this "separate and distinct element of possession with intent to distribute within 1000 feet of a school" (hereinafter "the Protected Location Element") *Gonzalez-Rodriguez*, 239 F.3d at 953. Rather, it only instructed the jury as follows:

> The crime of distributing 50 grams or more of actual (pure) methamphetamine, a Schedule II controlled substance, as charged in Count 1 of the Indictment, has three essential elements, which are:
>
> *One*, on or about December 12, 2019, in the Northern District of Iowa, the defendant intentionally transferred actual (pure) methamphetamine to another person;
>
> *Two*, at the time of transfer the defendant knew that it was a controlled substance; and
>
> *Three*, the amount the defendant transferred was 50 grams or more of actual (pure) methamphetamine.

8

It is not necessary that the government prove the defendant knew the substance was actual (pure) methamphetamine, as long as the government proves that the defendant knew the substance was controlled substance.

For you to find the defendant guilty of this crime, the government must prove the first two elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty of the crime charged in Count 1 of the Indictment. If you find the defendant committed the first two elements, you will be asked to make a finding as to the drug quantity.

. . .

With respect to the question of the defendant's guilt for the offenses charged in Count 1 of the Indictment, the government is not required to prove that the amount or quantity actual (pure) methamphetamine was as charged in the Indictment. The government need only prove beyond a reasonable doubt that there was a detectable amount of actual (pure) methamphetamine.

If you find a defendant guilty of the offense charged in Count 1 of the Indictment, you must determine whether the quantity of actual (pure) methamphetamine was: (1) less than 5 grams; (2) more than 5 grams but less than 50 grams; or (3) at least 50 grams.

Jury Instructions Nos. 11 & 12, R. Doc. 74 at 14-15.

Clearly, the jury instructions defining the elements of Count 1 completely failed to mention the Protected Location Element. Instead, it only enumerates the three elements for a regular § 841(a)(1) violation. More importantly, the district court erroneously instructed the jury that they could convict Mr. Webb of the charged § 860 violation after finding the satisfaction of the elements of a § 841(a)(1) violation. By doing so, the district court constructively amended the indictment via its jury instructions, thus subjecting this matter to the "prejudicial *per se*" standard of review. *See e.g.*, *Barrios–Perez*, 317 F.3d at 779 (8th Cir. 2003) (constructive amendment "occurs when the essential elements of the offense set forth in the indictment are in effect altered by the prosecutor or the

Appellate Case: 21-3830    Page: 17    Date Filed: 03/16/2022 Entry ID: 5137120

court after the grand jury has passed upon them") (quotation and alterations omitted); *Gill*, 513 F.3d at 849 (jury instructions constructively amend an indictment if they, in effect, allow the jury to convict the defendant of an offense other than the one alleged in the indictment).

Moreover, the erroneous jury instructions amounted to a denial of Mr. Webb's constitutional rights to due process, to indictment by a grand jury, and to a fair trial. *See* U.S. Const. amend. V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury….") The jury instructions did not correctly break down the offense on which Mr. Webb was being tried. The instructions further omitted one of the essential elements the jury had to find beyond a reasonable doubt in order to find Mr. Webb guilty as charged. Due to the erroneous instructions, Mr. Webb was convicted of an offense other than the offense charged by the grand jury.

This holds true despite the fact that the district court gave a separate instruction that the jury must determine whether the drug deal occurred w/in 1000 feet of a playground. Specifically, the district court charged that

> ***If you find the defendant guilty of distributing actual (pure)*** ***methamphetamine as alleged in Count 1***, you must determine whether the location at which the crime occurred was within 1,000 feet of the real property comprising a playground. The 1,000-foot zone can be measured in a straight line from the playground irrespective of actual pedestrian travel routes. The government does not have to prove that the defendant agreed, knew, or intended that the offense would take place within 1,000 feet of a playground.
>
> The term "playground" means any outdoor facility (including any parking lot appurtenant thereto) intended for recreation, open to the public, and

Appellate Case: 21-3830     Page: 18     Date Filed: 03/16/2022 Entry ID: 5137120

> with any portion thereof containing three or more separate apparatus intended for the recreation of children including, but not limited to, sliding boards, swingsets, and teeterboards.

Jury Instructions No. 14, R. Doc. 74 at 17 (emphasis added). Notably, the district court made it clear that the "playground" instruction is ***not*** given to the jury as an element of the offense. This is evidenced by the fact that, in Jury Instruction No. 27, the district court explicitly instructed that the elements of Count 1 "have been described in Instruction No. 11." Jury Instructions No. 27, R. Doc. 75 at 2. Moreover, a careful scrutiny of the "playground" jury charge reveals that the jury was instructed to determine whether the drug deal occurred within 1,000 feet of the playground ***only after*** they found Mr. Webb guilty of Count 1. In other words, the jury's convicting Mr. Webb of Count 1 constituted a prerequisite to trigger their subsequent determination of the playground issue, only as a sentencing enhancement. Such an instruction still violated due process because, by the time the jury determined on the playground issue, they had already found Mr. Webb guilty of Count 1 without evaluating the Protected Location Element before they found his guilt.

As such, Mr. Webb's convictions under Counts 1 and 2 must be vacated because the jury instructions constructively amended the indictment and denied his constitutional rights to due process, to indictment by a grand jury, and to a fair trial.

11

## II. Mr. Webb Was Denied of a Complete Defense of Entrapment Due to Operation of the Erroneous Jury Instructions.

### i. Legal Framework

This Court reviews the district court's denial of a proffered legal defense *de novo*. *United States v. Young*, 613 F.3d 735, 743 (8th Cir. 2010).

"Entrapment exists 'where the evidence establishes that the government agent originated the criminal design, the agent implanted in the mind of an innocent person the disposition to commit the offense, and the defendant then committed the criminal act at the urging of the government agent.' " *United States v. Williams*, 109 F.3d 502, 508 (8th Cir.1997) (quoting *United States v. Hulett*, 22 F.3d 779, 781 (8th Cir.1994)). Entrapment has two elements: government inducement and a lack of predisposition on the part of the defendant to engage in the crime. *United States v. Warren*, 788 F.3d 805, 810 (8th Cir. 2015). As an affirmative defense, entrapment is a question of fact generally left to the jury. *United States v. Coleman*, 284 F.3d 892, 894 (8th Cir. 2002). If a defendant can produce sufficient evidence of inducement, then the burden shifts to the prosecution to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime. *United States v. Berg*, 178 F.3d 976, 980 (8th Cir.1999); *see also United States v. Eldeeb*, 20 F.3d 841, 843 (8th Cir.1994) ("It is clear that when entrapment is an issue, the government must prove the absence of entrapment beyond a reasonable doubt.").

"[T]he Government may set decoys to entrap criminals. But it may not provoke or create a crime and then punish the criminal, its creature." *United*

12

*States v. Lard*, 734 F.2d 1290, 1292 (8th Cir. 1984), quoting *Casey v. United States*, 276 U.S. 413, 423 (1928) (Brandeis J., dissenting), overruled on other grounds. "The courts refuse to convict an entrapped defendant, not because his conduct falls outside the proscription of the statute, but because, even if his guilt be admitted, the methods employed on behalf of the Government to bring about conviction cannot be countenanced." *Sherman v. United States*, 356 U.S. 369, 380 (1958)(Frankfurter J., concurring). "Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law, is the transcending value at stake." *Id*.

Critically, "[t]he elements of predisposition should ***track the elements of the crime***." *Jacobson v. United States*, 503 U.S. 540, 560 (1992)(O'Connor J., dissenting)(emphasis added). "The entrapment defense is based on the assumption that Congress did not intend to punish a defendant who has committed ***all the elements*** of a proscribed offense upon the inducement or instigation of government agents." *Lard*, 734 F.2d at 1292 (emphasis added). *See also Sherman*, 356 U.S. at 379 ("In these cases raising claims of entrapment, the only legislative intention that can with any show of reason be extracted from the statute is the intention to make criminal precisely the conduct in which the defendant has engaged. That conduct includes ***all the elements*** necessary to constitute criminality.")(Emphasis added.)

13

### ii. Mr. Webb was not disposed to conduct the drug deal near a protected location.

Here, regardless of whether Mr. Webb was predisposed to engage in the controlled purchase itself, evidence shows that Mr. Webb was certainly not predisposed to conduct the deal ***within 1,000 feet of a protected area***. Specifically, at the time of the controlled purchase Mr. Webb lived in Des Moines, Iowa, approximately 200 miles way from Dubuque, Iowa, the city where the controlled purchase occurred. PSR, p. 17; Trial Transcript, hereinafter "TR." Vol. 3, p. 380. As the Government stated in its opening, "Mr. Webb gets to Dubuque. He has trouble finding Josh Walker, who is waiting in his truck. Josh Walker directs him where to go: The Hy-Vee parking lot." TR. Vol. 2, p. 138. Mr. Walker sent the following text messages to Mr. Webb: "OK so u wanna meet at a grocery store or a restaurant or the casino?" "Let me know and I'll get an address for somewhere to put in your gps." PSR, p. 6. Mr. Webb replied: "store or carwash." *Id*. Mr. Walker then provided Mr. Webb with an address for a Hy-Vee grocery store with an associated gas station and car wash, located in Dubuque, Iowa. *Id*.

Most importantly, Mr. Webb did not ask to meet with Mr. Josh Walker at the Hy-Vee parking lot in Dubuque. Nor did Mr. Walker use his own discretion to decide on meeting Mr. Webb at the Hy-Vee parking lot. Instead, it was law enforcement that carefully designed to arrange the controlled purchase at the Hy-Vee parking lot. At trial Investigator Chad Leitzen testified that

Appellate Case: 21-3830    Page: 22    Date Filed: 03/16/2022 Entry ID: 5137120

> [t]he plan was for Mr. Webb to be transporting 1 pound of
> methamphetamine from Des Moines to the confidential informant in
> Dubuque in exchange for $6,000. Therefore, I met with a large number of
> police officers, deputies, investigators, and a special agent from the Iowa
> Division of Narcotics Enforcement, and explained what **the plan was**,
> which was **for Mr. Webb to meet the confidential informant at the Hy-
> Vee parking lot at 400 South Locust**. I then gave instructions to the
> different individuals as to what their role in this investigation would be.
> Numerous officers were assigned as surveillance units **surrounding the
> Hy-Vee parking lot** in various strategic locations.

TR. Vol. 2, p. 146 (emphases added). He further testified that, then, Mr. Walker

"was **instructed to drive directly to the parking lot at 400 South Locust, at the

Hy-Vee**." TR. Vol. 2, p. 149 (emphasis added). Meanwhile, at the Hy-Vee

parking lot numerous officers "waited for approximately a half hour for Mr.

Webb to show up." TR. Vol. 2, p. 150.

Thus, there is no doubt that the Government entrapped Mr. Webb by

using the fact that the controlled purchase occurred at the Hy-Vee parking lot to

satisfy the Protected Location Element for a § 860 violation. This holds true

regardless of whether the Government formed the intention to pursue a § 860

charge, as opposed to a § 841 charge, before or after the controlled purchase.

### iii. The erroneous jury instruction denied Mr. Webb of a complete entrapment defense specifically as to the Protected Location Element.

At trial the district court correctly decided to instruct the jury on

entrapment together "with the elements" of the charged offenses. TR. Vol. 4, p.

481; Jury Instruction No. 27, R. Doc. 75, at 2-3. It also correctly instructed the

jury that the entrapment defense applies to all counts of the Indictment. TR. Vol.

3, p. 465; Jury Instruction No. 27, R. Doc. 75, at 2-3. Unfortunately, however,

15

when incorporating the elements of the offenses into the entrapment instruction,

the district court only referred to the erroneous instruction which completely

omitted the Protected Location Element for Count 1. When giving the

entrapment instruction the court charged the jury that

> One of the issues in this case is whether the defendant was entrapped. The government has the burden of proving beyond a reasonable doubt that the defendant was not entrapped by showing either: (1) the defendant was willing to commit *the crime charged in each count* before he was approached or contacted by Josh Walker, acting for the government; or (2) Josh Walker, acting for the government, did not persuade or talk

> the defendant into committing *the crimes charged*. If you find that the government proved at least one of these two things beyond a reasonable doubt, then you must reject the defendant's claim of entrapment. If you find that the government failed to prove at least one of these two things beyond a reasonable doubt, then you must find the defendant not

> guilty.

> The law allows the government to use undercover agents, deception, and other methods to present a person already willing to commit a crime with the opportunity to commit a crime, but the law does not allow the government to persuade an unwilling person to commit a crime. Simply giving someone a favorable opportunity to commit a crime is not the same as persuading him.

> You are to consider this instruction *as to each charge individually* and may reach the same or a different conclusion as to each charge.

> Thus, as to the crime of distributing methamphetamine charged in Count 1 of the indictment, if you find the government proved all of the elements beyond a reasonable doubt (*as those elements have been described in Instruction No. 11*), and if you further find the government has proved beyond a reasonable doubt that the defendant was not entrapped (as defined in in this instruction), then you must find the defendant guilty of the crime charged; otherwise you must find the defendant not guilty of this crime.

Jury Instruction No. 27, R. Doc. 75, at 2-3 (emphases added).

Critically, as demonstrated herein above, as to Count 1 "th[e] elements

[that] have been described in Instruction No. 11" do not include the Protected

Appellate Case: 21-3830    Page: 24    Date Filed: 03/16/2022 Entry ID: 5137120

Location Element. Jury Instructions Nos. 11 & 12, R. Doc. 74 at 14-15. As a result, the court failed to instruct the jury that the entrapment defense should also go to the Protected Location Element. Such a failure eliminated any opportunity that the jury could possibly find Mr. Webb was entrapped specifically as to the Protected Location Element. Should the entrapment instruction correctly went together with the Protected Location Element, no reasonable jury could have found that Mr. Webb violated 21 U.S.C. § 860.

As such, Mr. Webb was denied of a complete entrapment defense specifically as to the Protected Location Element. Consequently, due to the operation of the erroneous jury instructions, Mr. Webb was convicted under Counts 1 and 2 as a result of impermissible entrapment in violation of his constitutional rights to due process.

## III. Mr. Webb's Trial Counsel Was Ineffective.

The claim of ineffective assistance of counsel is a mixed question of law and fact. *Laws v. Armontrout*, 863 F.2d 1377, 1381 (8th Cir.1988) (*en banc*). Accordingly, the district court's factual findings are subject to the clearly erroneous standard of review, while the district court's legal conclusions are subject to *de novo* review. *Id*.

"[T]he [Supreme Court] has recognized that 'the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 (1970). To establish ineffective assistance of counsel, the defendant must show (1) that counsel's representation fell below an objective standard of

17

reasonableness; and (2) that the error must have prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *Strickland* is careful to discourage the application of this two-part test as a set of "mechanical rules," and instead to guide the decision making process and ultimately to focus the inquiry on the "fundamental fairness of the proceeding whose result is being challenged." *Id*. at 696.

Mr. Webb submits that trial counsel was constitutionally ineffective for failing to object to the the court's erroneous jury instructions.

First, as demonstrated herein above, the court committed grave errors on more than one occasion when instructing the jury. Those errors, such as the court's complete failures to include the Protected Location Element, to instruct that the entrapment defense goes together with the Protected Location Element, are patently obvious. A timely objection would have reminded the court of the well established law. However, trial counsel did not object to any of those errors. No reasonable lawyer could have failed to voice objections under such circumstances. However, counsel failed to do so, and his performance therefore "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Moreover, the record suggests nothing strategic about failing to object to the patent and repeated errors.

Trial counsel's deficient performance severely prejudiced Mr. Webb and implicated his constitutional rights to due process and to a fair trial. Counsel's silence, and the court's consequent failure to correct its errors, misguided the

Appellate Case: 21-3830    Page: 26    Date Filed: 03/16/2022  Entry ID: 5137120

jury to convict Mr. Webb on all three counts. Had counsel voiced objections contemporaneously, the court could have conducted the jury instructions in a proper manner. Thus, the outcome of the trial could have been different.

As such, due to trial counsel's failures, Mr. Webb was denied his constitutional right to effective assistance of counsel guaranteed by the Sixth Amendment.

## IV. Mr. Webb's Sentence Is Procedurally and Substantively Unreasonable.

### i. Legal Framework

Appellate courts review the reasonableness of a sentence under the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 41, 51 (2007).

A district court commits "significant procedural error" by "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the [18 U.S.C.] § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Id*. at 51.

A sentence is substantively unreasonable if the district court "fails to consider a relevant factor that should have received significant weight, gives significant weight to an improper or irrelevant factor, or considers only the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Watson*, 480 F.3d 1175, 1177 (8th Cir. 2007). A sentencing court's "overarching" mandate is to impose a sentence "sufficient,

Appellate Case: 21-3830    Page: 27    Date Filed: 03/16/2022 Entry ID: 5137120

but not greater than necessary" to achieve all the aims of § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007)(citing 18 U.S.C. § 3553(a)).

This Court reviews the district court's sentence for abuse of discretion. *United States v. Bolden*, 596 F.3d 976, 984 (8th Cir. 2010). The burden is on a defendant to show his sentence should have been lower considering the factors enumerated in 18 U.S.C. § 3553(a). *United States v. Milk*, 447 F.3d 593, 603 (8th Cir. 2006).

Here, Mr. Webb's sentence is both procedurally and substantively unreasonable for the following reasons:

### ii. The District Court Abused Its Discretion in Applying the Career Offender Enhancement.

The district court found Mr. Webb to be a career offender under USSG § 4B1.1 based on the following prior convictions: delivery of a controlled substance in violation of Iowa Code § 124.401(1)(d), and, possession of a controlled substance with intent to deliver in violation of Iowa Code § 124.401(1)(B)(7). PSR, p. 11, 13; ST. Vol. 1, p. 13.

Mr. Webb submits that the career offender enhancement should not apply because what is proscribed by Iowa Code § 124.401 is categorically broader than the Guidelines' definition of "a controlled substance offense" (Sentencing Transcript, hereinafter "ST." Vol. 1, p.9), for the following two reasons:

First, Iowa Code § 124.401's definition of "controlled substance" is broader than the definition of "controlled substance" under USSG § 4B1.2. Iowa Code § 124.401 criminalizes acts involving both "counterfeit

20

substance[s]" and "simulated controlled substance[s]." I.C.A. § 124.401(1). In contrast, the Guidelines' definition of a "controlled substance offense" only includes "counterfeit substance[s]," but does not specifically mention "simulated controlled substances." USSG § 4B1.2(b).

Second, Iowa law imposes aiding and abetting liability, which is inherent in the definition of all drug offenses, more broadly than the Guidelines' "generic" definition of aiding and abetting. Application Note 1 to USSG § 4B1.2 includes "the offenses of aiding and abetting" but does not define that term. The "generic" aiding and abetting requires proof that the accomplice intended to promote or facilitate the underlying crime. In contrast, Iowa's aiding and abetting doctrine only requires the lesser "knowledge" mens rea. *See United States v. Boleyn*, 929 F.3d 932 (8th Cir. 2019)(Iowa is one of the few States that "only requires mere knowledge that one's actions will facilitate a crime.")

Mr. Webb recognized that, in *United States v. Henderson*, 11 F.4th 713, 718-19 (8th Cir. 2021) this Court found that even a conviction under a broader state statute can serve as a predicate controlled-substance offense for career offender enhancement under the Guidelines. However, it is important to note that there is a circuit split in this regard. The Second, Fifth, and Ninth Circuits have all concluded that "controlled substance" in USSG § 4B1.2(b) refers to the federal definition; and, therefore any enhancement based on a prior conviction under a broader statute is illegal. *See e.g., United States v. Townsend*, 897 F.3d

21

66, 71 (2d Cir. 2018); *United States v. Leal-Vega*, 680 F.3d 1160, 1166 (9th Cir. 2012); *United States v. Gomez-Alvarez*, 781 F.3d 787, 793 (5th Cir. 2015).

Critically, moreover, Mr. Webb was sentenced on his prior state convictions in 2011 and 2017 (PSR, p. 11, 13), respectively, years prior to the issuance of the *Henderson* opinion in 2021. The Supreme Court has held that retroactive application of judicial decisions that unforeseeably expand the scope of criminal liability can violate a defendant's due process rights. *See Marks v. United States*, 430 U.S. 188 (1977); *Bouie v. City of Columbia*, 378 U.S. 347 (1964). Due process principles of notice and fair warning could also "protect individuals ... from ex post applications of unforeseeable judicial expansions of the punishments that result from a conviction." *United States v. Beals*, 698 F.3d 248, 272 (6th Cir. 2012). *See also United States v. Luersen*, 278 F.3d 772 (8th Cir. 2002).

Here, this Court's change of law is unforeseeable. Prior to *Henderson,* in *United States v. Sanchez-Garcia*, 642 F.3d 658 (8th Cir. 2011) this Court found that effectively recognized that a conviction under a categorically broader statute cannot trigger the career offender enhancement. The Court found that a California offense did not qualify as a controlled substance offense under the Guidelines for career offender purposes, because "the statute is overinclusive." 642 F.3d at 662. Now, the *Henderson* court commented that *Garcia* "did not hold that a state law crime must involve one of those substances to be a controlled substance offense under the career offender Guidelines. We simply

22

affirmed the Guidelines enhancement at issue without addressing that question." 11 F.4th at 718. However, *Garcia* did find the California statute is "overinclusive" and therefore cannot trigger the enhancement under the guidelines. 642 F.3d at 662. Thus, *Garcia* provided sufficient notice regarding the inapplicability of the career offender enhancement where the state statute is broader. Consequently, the change of law as a result of *Henderson,* which is totally opposite to *Garcia*, is unforeseeable.

Considering the above-specified circuit split, coupled with the unforeseeable change of law, a similarly situated hypothetical defendant with the same offense conduct and criminal history just like Mr. Webb would would not be subject to the career offender enhancement, if this hypothetical defendant was sentenced prior to the decision of *Henderson* or sentenced in another circuit. Comparing Mr. Webb and this hypothetical defendant, a reasonable jurist would find a surprising sentencing disparity, and an equal protection violation, because they are similarly situated but received totally different punishment, simply depending on the timing or the venue of the sentencing.

As such, the district court abused its discretion in applying of the career offender enhancement.

### iii.  The District Court Abused Its Discretion in Regarding the Guidelines' 10:1 Methamphetamine Ratio as Mandatory.

According to the PSR, after the controlled purchase law enforcement retrieved the black grocery-style bag from the CS, which contained

Appellate Case: 21-3830     Page: 31     Date Filed: 03/16/2022 Entry ID: 5137120

methamphetamine. PSR, p. 6. "Laboratory testing reflects that the methamphetamine weighed 449.4 grams and was 100% pure." *Id*.

The Guidelines establishes a 10:1 ratio in their treatment of quantities of methamphetamine mixture and actual methamphetamine or ice. USSG § 2D1.1(c). Thus, in this case if the laboratory did not test the purity of the 449.4 grams of meth, it would be equivalent to 898.8 KG of marijuana, resulting in a base offense level of 28. *Id*. However, since it was tested and found to be actual meth, it is equivalent to 8,988 KG of marijuana, resulting in a base offense level of 32. *Id*. At sentencing, the defense argued that this 10:1 ratio is unreasonable and should not apply. ST. Vol. 1, p. 17. However, the district court rejected it. ST. Vol. 1, p. 33.

A. Multiple district courts judges have decided to refuse the 10:1 ratio.

This 10:1 ratio has been widely criticized because it caused significant sentencing disparity in federal drug cases. As an Idaho district court Judge B. Lynn Winmill commented, this ratio "was, by its very nature, a product of political calculation and compromise rather than empirical analysis." *United States v. Meyer*, 2021 WL 2482542 (D. Idaho. June 17, 2021) at *2. This presumed conversion ratio "has led to substantial and unwarranted disparities in sentencing based solely on whether methamphetamine is lab tested." *Id*. "In many cases," Judge Winmill observed that, "the Guidelines range where testing has been performed is double that where a drug's purity is unknown." *Id*. at *3.

This disparity is caused because "[t]he reasons why testing is or is not performed in any case are completely arbitrary." *Id*. In fact,

> [i]n many cases, only some of the drugs were seized and available for testing. In others, the testing lab was too busy to complete testing before sentencing. In some, the wise defendant pled guilty early in the case so that sentencing would occur before testing could be completed. In many cases, the prosecution originated with a state agency where testing could not be completed in a timely manner. Regardless, none of these reasons relate to the defendant's culpability or the danger which he or she poses to society.

*Id*.

Two district court judges in the Eighth Circuit also made similar findings. In *United States v. Nawanna*, 321 F.Supp.3d 943 (N.D. Iowa, 2018), Judge Mark W. Bennett announced his policy disagreement with the methamphetamine Guidelines. After conducting an in-depth analysis of this issue, Judge Bennett set forth various reasons as to why he continues to have a policy disagreement with the methamphetamine Guidelines, including:

> 1. The 10–to–1 ratio established in the Guidelines is not based on empirical evidence, creating Guideline ranges for actual (and ice) methamphetamine that are excessive and not "heartlands."
> 2. Drug purity is not an accurate proxy for culpability in light of the fact that nearly all methamphetamine trafficked in recent years has been substantially pure.

*Id*. at 943-956.

Chief Judge Leonard T. Strand joined Judge Bennett in *United States v. Harry*, 313 F.Supp.3d 969 (N.D. Iowa, 2018). Based on reasoning independent

Appellate Case: 21-3830    Page: 33    Date Filed: 03/16/2022 Entry ID: 5137120

to but consistent with Judge Bennett's analysis, Chief Judge Strand decided to "adopt the approach Judge Bennett described in *Nawanna* [which] will, hopefully, lead to greater uniformity and predictability." 313 F.Supp.3d at 974. Both judges indicated that they therefore will apply the only the 2 kilogram marijuana equivalency even in cases involving actual/pure methamphetamine or ice. *Id*.

As with the crack/powder cocaine disparity, district courts have the discretion to disagree with the Guidelines on policy grounds and find that a particular Guideline should not applied in a given case. This holds particularly true when the Guidelines became advisory, as opposed to mandatory, after *United States v. Booker*, 543 U.S. 220 (2005).

   B.   The district court erroneously regarded the Guidelines' 10:1 ratio
        as mandatory.

A sentence is deemed procedurally unreasonable if the district court, *inter alia*, "treat [ed] the Guidelines as mandatory" post-*Booker*. *United States v. Toothman*, 543 F.3d 967, 970 (8th Cir. 2008), quoting *Gall*, 128 S.Ct. at 597. *See also United States v. Smith*, 983 F.3d 1006 (8th Cir. 2020)(to treat the Sentencing Guidelines as mandatory is to commit significant procedural error, as would warrant reversal); *United States v. Williams*, 755 Fed.Appx. 926 (11th Cir. 2018)(the district court's conclusion that it was bound to apply the supervisory role enhancement was based upon a misunderstanding of the law; sentence vacated).

Appellate Case: 21-3830   Page: 34   Date Filed: 03/16/2022 Entry ID: 5137120

Unfortunately, here, the district court erroneously regarded the Guidelines' 10:1 methamphetamine ratio as mandatory. After hearing the defense' argument in this regard, the court commented at sentencing as follows:

> Were I in the legislature, ***I would vote to alter the current treatment*** of the way that ice methamphetamine is treated in the guidelines and also in the statutes concerning -- or versus powder methamphetamine. But I'm not in the legislature. I am appointed for life. I'm an unelected official. And it is improper in my view in our democratic system for an unelected official to ignore the will of Congress and the will of the people by substituting my own judgment about how I think the guidelines ought to come out or how I think the Congress should treat powder methamphetamine versus ice methamphetamine.
>
> . . .
>
> ***It is not for me to step in and substitute my judgment and somehow sit as a super legislature*** and come up with my own ratio in my view of what I think would be appropriate when I'm an unelected official. And so from the political philosophical standpoint, I reject the idea that I should be doing that.
>
> . . .
>
> Should it be treated at the ratio it is now? That's for the legislature to decide and the Commission to decide. ***It's not for me***.

ST. Vol. 1, p. 33-36. Thus, it is patently clear that, while the judge did not agree with the Guidelines' 10:1 ratio, it erroneously found that the ratio is mandatorily binding on this case and that only Congress has the authority to change it. The district court's conclusion was based on mistaken understanding of the law.

As such, Mr. Webb's sentence is procedurally unreasonable and therefore must be vacated.

### iv. Sentence Greater than Necessary

Mr. Webb's 380-month sentence is substantively unreasonable because because it is simply "greater than necessary." 18 U.S.C. § 3553(a).

Appellate Case: 21-3830     Page: 35     Date Filed: 03/16/2022   Entry ID: 5137120

A sentencing court's "overarching" mandate is to impose a sentence "sufficient, but not greater than necessary" to achieve all the aims of § 3553(a). *Kimbrough*, 552 U.S. at 101 (citing 18 U.S.C. § 3553(a)).

The court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1)–(7).

In *Kimbrough*, the Supreme Court held that federal district court may conclude that 100:1 crack/powder cocaine ratio yields sentence "greater than necessary." *Id*. The same holds true here as to the 10:1 methamphetamine ratio. Thus, Mr. Webb's sentence significantly overstates the seriousness of what is attributable to him.

Moreover, the career offender enhancement significantly increased Mr. Webb's base offense level from 34 to 37. It is critical for this Court to note, as a

28

3553(a) factor, that such a significant sentence enhancement is completely based on the change of law which occurred after Mr. Webb's prior convictions, as detailed herein above. When Mr. Webb received his prior convictions, he was not put on notice that the law in this Circuit was going to change to the extent that even a broader state statute could serve as a predicate offense so as to subject him to career offender enhancement. Moreover, the enhancement is not based on Mr. Webb's extra criminal conduct in addition to his prior convictions or the instant matter. Yet, he is now facing much more severe punishment than he could have expected at the time of his prior convictions, simply due to nothing more than the change of law.

As such, Mr. Webb's sentence is both procedurally and substantively unreasonable, especially when viewing the above specified errors collectively.

## CONCLUSION

Mr. Webb respectfully requests, based on the foregoing, that this Court vacate his convictions and sentence and remand for further proceedings.

Date:        March 16, 2022

Respectfully submitted,

***s/ Murdoch Walker II, Esq.***
Murdoch Walker, II. Esq.
Ga. Bar No. 163417
mwalker@lowtherwalker.com

***s/ Bingzi Hu, Esq.***
Bingzi Hu, Esq.
Ga. Bar # 455315
bhu@lowtherwalker.com

29

Lowther | Walker LLC
101 Marietta St., NW, Ste. 3325
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com

Attorneys for Patrick Webb, Jr.

30

## CERTIFICATE OF COMPLIANCE

This document complies with the type volume limited of Fed R. App. P. 32(a)(7)(B), the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed R. App. P. 32(f), this document contains 7,623 words.

This document complies with the typeface requirements of Fed R. App. P.32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Mac version 16.45 in Book Antique font, 13 pt.

The brief has been scanned for viruses and it is virus free.

Date:         March 16, 2022

                                      Respectfully submitted,


                                      ***<u>s/ Bingzi Hu, Esq.</u>***
                                      Bingzi Hu, Esq.
                                      Ga. Bar # 455315
                                      bhu@lowtherwalker.com

                                      Lowther | Walker LLC
                                      101 Marietta St., NW, Ste. 3325
                                      Atlanta, GA 30303
                                      404.496.4052
                                      www.lowtherwalker.com

                                      Attorney for Patrick Webb, Jr.

31

# CERTIFICATE OF SERVICE

I hereby certify that on March 16, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by way of the CM/ECF system, which automatically will serve this document on the attorneys of record for the parties in this case by electronic mail.

Date:          March 16, 2022

Respectfully submitted,

***s/ Bingzi Hu, Esq.***
Bingzi Hu, Esq.
Ga. Bar # 455315
bhu@lowtherwalker.com

Lowther | Walker LLC
101 Marietta St., NW, Ste. 3325
Atlanta, GA 30303
404.496.4052
www.lowtherwalker.com

Attorney for Patrick Webb, Jr.

Appellate Case: 21-3830     Page: 40     Date Filed: 03/16/2022 Entry ID: 5137120