No. 21-3830

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

PATRICK WEBB, JR.,

Defendant-Appellant.

*Appeal from the United States District Court*
*For the Northern District of Iowa*
*Honorable C.J. Williams, Judge*

## BRIEF OF APPELLEE

ANTHONY MORFITT
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (fax)
Tony.morfitt@usdoj.gov

## SUMMARY OF THE CASE

Defendant Patrick Webb, Jr. appeals his conviction and 380-month sentence after a jury found him guilty of distributing methamphetamine near a protected location, possessing a firearm in furtherance of a drug trafficking crime, and possessing a firearm as a prohibited person. Defendant argues the district court erred in instructing the jury, that his trial counsel was ineffective, and the district court erred in sentencing defendant.

Oral argument is unnecessary.

Appellate Case: 21-3830    Page: 2    Date Filed: 06/07/2022 Entry ID: 5164990

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE ........................................................................ i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES ..................................................................... v

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF THE ISSUES ............................................................... 1

STATEMENT OF THE CASE ................................................................. 2

    Relevant Procedural History ................................................................ 2

    Rulings Presented for Review .............................................................. 4

    Statement of the Facts ....................................................................... 4

       A.    Defendant's Offense Conduct ................................................. 4

       B.    The Trial ......................................................................... 12

       C.    The Jury Instructions ........................................................ 15

SUMMARY OF THE ARGUMENT ......................................................... 17

ARGUMENT .................................................................................... 18

I.    The District Court Did Not Commit Reversible Error in Providing Instructions to the Jury ................................................ 18

       A.    Standard of Review ............................................................ 18

ii

B.     Defendant Waived Any Objection to the Jury Instructions on the Protected Location When He Agreed to the Instruction on This Issue Before Trial or, at the Least, Forfeited His Objection by Failing to Raise it During Trial ............................................................... 19

     1.     Defendant expressly agreed to the challenged jury instructions on the protected location and has waived any objection to the instructions .............. 20

     2.     Even if defendant did not waive his objection to the treatment of the protected location in the instructions, he forfeited his objection and the Court should review this argument only for plain error ........................................................................... 21

C.     The District Court's Instructions Regarding Count 1 Were Not Plainly Erroneous ................................................ 22

II.     This Court Should Not Entertain Defendant's Attempt to Raise an Ineffective Assistance of Counsel Claim on Appeal and Defendant Was Not Denied Effective Assistance of Counsel Regarding the Jury Instructions ..................................... 26

A.     Standard of Review ............................................................. 27

B.     This Court Should Deny Defendant's Ineffective Assistance of Counsel Claims ................................................ 28

     1.     This Court should not entertain defendant's ineffective assistance of counsel claims on appeal ...... 28

          a.     The record is not fully developed ........................ 29

          b.     If the Court chooses not to act, it will not be a plain miscarriage of justice ............................. 30

Appellate Case: 21-3830    Page: 4    Date Filed: 06/07/2022 Entry ID: 5164990

        c.    Counsel's error, if any, is not readily apparent ............................................................. 30

       2.    Defendant's ineffective assistance of counsel claim is without merit because defendant can show neither deficient performance nor prejudice ...... 31

III.  The District Court Committed No Procedural Error and Did Not Impose a Substantively Unreasonable Sentence ................... 33

    A.  Standard of Review ............................................... 34

    B.  The District Court Did Not Procedurally Err in Finding Defendant Was a Career Offender ....................................... 35

    C.  The District Court Did Not Plainly Err by Considering the Sentencing Guidelines to be Mandatory ........................ 38

    D.  The Court's Sentence Was Not Substantively Unreasonable ........................................................ 40

CONCLUSION ................................................................ 43

CERTIFICATE OF FILING AND SERVICE ......................................... 44

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS .................................................. 45

Appellate Case: 21-3830    Page: 5    Date Filed: 06/07/2022 Entry ID: 5164990

# TABLE OF AUTHORITIES

**Cases**                                                   **Page**

*Evans v. Luebbers*, 371 F.3d 438 (8th Cir. 2004)....................................27

*Gall v. United States*, 552 U.S. 38 (2007) ...............................................34

*Molina-Martinez v. United States*, 578 U.S. 189 (2016)........................19

*Montanye v. United States*, 77 F.3d 226 (8th Cir. 1996) .......................32

*Sanders v. United States*, 341 F.3d 720 (8th Cir. 2003) ........................31

*Strickland v. Washington*, 466 U.S. 668 (1984)......................1, 27, 31-32

*United States v. Anwar*, 880 F.3d 958 (8th Cir. 2018) ...........................35

*United States v. Apfel*, 97 F.3d 1074 (8th Cir. 1996) ..............................32

*United States v. Barrios–Perez*, 317 F.3d 777 (8th Cir. 2003)...............24

*United States v. Bartlett*, 856 F.2d 1071 (8th Cir. 1988).......................23

*United States v. Blankenship*, 552 F.3d 703 (8th Cir. 2009)................34

*United States v. Bordeaux*, 674 F.3d 1006 (8th Cir. 2012)....................35

*United States v. Callahan*, 800 F.3d 422 (8th Cir. 2015) ......................19

*United States v. Deegan*, 605 F.3d 625 (8th Cir. 2010) ...................35, 41

*United States v. Feemster*, 572 F.3d 455 (2009).....................................41

*United States v. Ford*, 987 F.3d 1210 (8th Cir. 2021)............................34

*United States v. Gill*, 513 F.3d 836 (8th Cir. 2008) ................................24

*United States v. Henderson*, 11 F.4th 713 (8th Cir. 2021) .1, 36-37, 40-42

*United States v. Hubbard*, 638 F.3d 866 (8th Cir. 2011)........................28

*United States v. Iron Eyes*, 367 F.3d 781 (8th Cir. 2004) .......................23

Appellate Case: 21-3830    Page: 6    Date Filed: 06/07/2022 Entry ID: 5164990

*United States v. Kane*, 639 F.3d 1121 (8th Cir. 2011) ............................ 35

*United States v. Keatings*, 787 F.3d 1197 (8th Cir. 2015) ...................... 41

*United States v. Lara-Ruiz*, 681 F.3d 914 (8th Cir. 2012)...................... 34

*United States v. Lard*, 734 F.2d 1290 (8th Cir. 1984) ...................... 25, 26

*United States v. Olano*, 507 U.S. 725 (1993) ......................................... 34

*United States v. Pereyra-Gabino*, 563 F.3d 322 (8th Cir. 2009) ......... 1, 23

*United States v. Phelps*, 536 F.3d 862 (8th Cir. 2008)........................... 34

*United States v. Poitra*, 648 F.3d 884 (8th Cir. 2011) .................. 1, 18, 22

*United States v. Reynolds*, 643 F.3d 1130 (8th Cir. 2011)................. 1, 34

*United States v. Ruzicka*, 988 F.3d 997 (8th Cir. 2021) ......................... 19

*United States v. Sanchez-Gonzalez*, 643 F.3d 626 (8th Cir. 2011) ........ 27

*United States v. Schwarte*, 645 F.3d 1022 (8th Cir. 2011) ................ 1, 27

*United States v. Spencer*, 998 F.3d 813 (8th Cir. 2021)............... 1, 18, 19

*United States v. Thompson*, 690 F.3d 977 (8th Cir. 2012) .............. 28, 29

*United States v. Vera-Gutierrez*, 964 F.3d 733 (8th Cir. 2020) ............. 35

**Federal Statutes**

18 U.S.C. § 922(g)(1)................................................................................2

18 U.S.C. § 922(g)(3)................................................................................2

18 U.S.C. § 924(c)(1)................................................................................2

18 U.S.C. § 3231 .......................................................................................1

18 U.S.C. § 3553(a)................................................................................40

21 U.S.C. § 841(a)(1)................................................................................2

Appellate Case: 21-3830    Page: 7    Date Filed: 06/07/2022 Entry ID: 5164990

21 U.S.C. § 841(b)(1)(A) ...............................................................2

21 U.S.C. § 851 .............................................................................2

21 U.S.C. § 860(a) ...................................................................2, 25

28 U.S.C. § 1291 ...........................................................................1

**Federal Rules**

USSG §4B1.1 .............................................................................1, 33

USSG §4B1.1(a) ............................................................................36

vii

Appellate Case: 21-3830    Page: 8    Date Filed: 06/07/2022 Entry ID: 5164990

# JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.

On December 6, 2021, the court entered final judgment, and on

December 10, 2021, defendant filed a timely notice of appeal. This

Court has jurisdiction over this criminal appeal pursuant to 28 U.S.C.

§ 1291.

# STATEMENT OF THE ISSUES

**I.**   ***Whether the District Court Committed Reversible Error in Providing Instructions to the Jury?***

*United States v. Spencer*, 998 F.3d 813 (8th Cir. 2021)
*United States v. Poitra*, 648 F.3d 884 (8th Cir. 2011)
*United States v. Pereyra-Gabino*, 563 F.3d 322 (8th Cir. 2009)

**II.**   ***Whether This Court Should Entertain Defendant's Attempt to Raise an Ineffective Assistance of Counsel Claim on Appeal and Whether Defendant Was Denied Effective Assistance of Counsel Regarding the Jury Instructions?***

*United States v. Schwarte*, 645 F.3d 1022 (8th Cir. 2011)
*Strickland v. Washington*, 466 U.S. 668 (1984)

**III.**   ***Whether the District Court Committed Procedural Error and Imposed a Substantively Unreasonable Sentence***

*United States v. Henderson*, 11 F.4th 713 (8th Cir. 2021)
*United States v. Reynolds*, 643 F.3d 1130 (8th Cir. 2011)
USSG §4B1.1

1

## STATEMENT OF THE CASE

### Relevant Procedural History

On June 16, 2020, defendant was charged in a three – count indictment with distribution of a controlled substance near a protected location in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 851, and 860(a) (Count 1), possession of a firearm during and in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) (Count 2), and being a felon and a drug user in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2) (Count 3). (R. Doc. 2.)[1] On January 21, 2021, the grand jury returned a superseding indictment

---

[1] "R. Doc." refers to the district court docket in case number 20-CR-01018-CJW-MAR, and each reference is followed by the docket entry number and applicable page number. "Def. Brief" refers to defendant's opening brief and is followed by the applicable page number.

Ex. 10 refers to a video, including audio, of a law enforcement recorded interview with defendant. (R. Doc. 73.) Ex. 12 refers to a video, including audio, of a law enforcement recorded interview with defendant. (R. Doc. 73.) Ex. 13 refers to a video, including audio, from a body camera and audio recorder admitted into evidence at the trial. (R. Doc. 73.) Ex. 17 refers to surveillance video from the inside of a car wash bay admitted into evidence at trial. (R. Doc. 73.) Ex. 24 refers to an audio file admitted into evidence at the trial. (R. Doc. 73.)

Appellate Case: 21-3830    Page: 10    Date Filed: 06/07/2022 Entry ID: 5164990

that amended the language of Count 3 but did not otherwise add or change any of the pending charges. (R. Doc. 41.)

On March 8, 2021, trial began. (R. Doc. 71.) After a three – day trial, the jury found defendant guilty of all three counts in the superseding indictment. (R. Doc. 76.) Defendant filed a motion for a judgment of acquittal and for a new trial. (R. Doc. 81.) The government resisted the motion. (R. Doc. 85-86.) On April 16, 2021, the district court denied defendant's motion. (R. Doc. 89.)

On December 3, 2021, the district court sentenced defendant. (R. Doc. 109.) After hearing argument on whether defendant qualified as a career offender, the district court accepted the computation of the advisory guidelines range as determined by the United States Probation Office (USPO). (R. Doc. 124, at 12-13.) Based on the district court's finding that defendant was a career offender, defendant's total offense level was 37. (R. Doc. 124, at 13.) Based on an offense level of 37 and a criminal history category of VI, defendant's advisory guidelines range of imprisonment was 420 months to life. (R. Doc. 124, at 13-14.) The district court varied downward and sentenced defendant to 380 months' imprisonment. (R. Doc. 124, at 38-39.)

Appellate Case: 21-3830    Page: 11    Date Filed: 06/07/2022 Entry ID: 5164990

**Rulings Presented for Review**

Defendant challenges his convictions on Counts 1 and 2, arguing, for the first time on appeal, that the district court's jury instructions regarding Count 1 were deficient. Defendant also argues that he received ineffective assistance of counsel at trial. Finally, defendant challenges his sentence, arguing that the district court committed procedural error by finding that he was a career offender and imposed a substantively unreasonable sentence.

**Statement of the Facts**

### A. *Defendant's Offense Conduct*

On October 15, 2019, Investigator Chad Leitzen with the Dubuque Drug Task Force (DDTF) developed J.W. as a cooperator. (R. Doc. 121, at 174.) Prior to October 15, 2019, Investigator Leitzen confronted J.W. on October 11, 2019, regarding the damage to a GPS unit that was placed on J.W.'s vehicle. (R. Doc. 121, at 173.) At this time, Investigator Leitzen informed J.W. of two controlled buys of methamphetamine that had been conducted from J.W. with the use of a confidential informant. (R. Doc. 121, at 173 – 74.) The first controlled buy from J.W. occurred on September 9, 2019, for 15.85 grams of

4

methamphetamine and the second buy from J.W. occurred on September 12, 2019, for 27.47 grams of methamphetamine. (R. Doc. 121, at 174 – 75.) Investigator Leitzen informed J.W he could be charged with delivery of methamphetamine and criminal mischief but asked if J.W. wanted to cooperate with the DDTF in exchange for possible leniency. (R. Doc. 121, at 174.) J.W. told Investigator Leitzen that he would be interested and willing to do so. (R. Doc. 121, at 176.) During this conversation, J.W. first brought up defendant's name. (R. Doc. 121, at 176 – 77.)

During J.W.'s debriefing, J.W. mentioned several persons of interest and provided information about defendant. (R. Doc. 121, at 176 – 77.) J.W. had met defendant in prison. (R. Doc. 122, at 332.) After J.W. and defendant were released from prison, J.W. had purchased methamphetamine from defendant. (R. Doc. 122, at 333.) During his debriefing with Investigator Leitzen, J.W. showed Investigator Leitzen test messages between J.W. and defendant that occurred prior to J.W. becoming a cooperator. (R. Doc. 121, at 176 – 77.) On October 10, 2019, J.W. sent a text message to defendant, "Hey I was thinking if I can pull off getting a half lets do that. Makr it more worth

5

all our time.  I got my car title I can put ob it." (R. Doc. 122, at 350 –

51.)  Defendant replied, "Ok imma make something happen." (R. Doc.

122, at 351.)  J.W. showed Investigator Leitzen text messages from

October 14, 2019, in which defendant text messaged J.W., "Well I need

to no what u want or how much your trying to spend etc." (R. Doc. 121,

at 177; R. Doc. 73 – 17, at 3.)

Investigator Leitzen met with J.W. on October 21, 2019, to place a

recorded phone call to defendant without success.  (R. Doc. 121, at 178.)

On November 22, 2019, J.W. contacted Investigator Leitzen and told

him that defendant had contacted J.W. and stated that defendant

wanted to bring a half pound of meth to J.W. in Dubuque on November

30, 2019.  (R. Doc. 121, at 178.)  Investigator Leitzen then met with

J.W. on November 27, 2019, to get pictures of the messages and to place

a recorded call to defendant.  (R. Doc. 121, at 179; (R. Doc. 73 – 18.)

They initially attempted to conduct a Facebook Messenger recorded call

between J.W. and defendant, but the call went unanswered.  (R. Doc.

121, at 179.)  Defendant called J.W. back through Facebook Messenger

and defendant confirmed he would be coming to Dubuque.  (R. Doc. 121,

at 179.)  This call between defendant and J.W. was recorded and J.W.

6

confirmed with defendant he had the $3,100. (R. Doc. 121, at 179; Ex. 24.) The controlled buy between J.W. and defendant planned for November 30, 2019, did not occur. (R. Doc. 121, at 180.)

On December 12, 2019, J.W. contacted Investigator Leitzen and told him defendant would be trying to come to Dubuque from Des Moines later that day to sell meth to J.W. (R. Doc. 121, at 181.) J.W. and defendant exchanged messages on Facebook Messenger to set up the deal. (R. Doc. 121, at 181 – 83; R. Doc. 73 – 20, at 10 – 12.) On December 12, 2019, J.W. messaged defendant, "So now what. U on the run." (R. Doc. 73 – 20, at 9.) Defendant replied, "Kinsa tryna come see u today." (R. Doc. 73 – 20, at 9.) J.W. messaged defendant, "u gonna bring a whole one or half cause I need to get the money out if this gonna happen." (R. Doc. 73 – 20, at 9-10.) Defendant replied, "Well u only wanted a quarter so if you want more let me no cuz I need to figure out how much the ticket is." (R. Doc. 73 – 20, at 10.) J.W. responded, "When did I say I only wanted a quarter," "Told u whatever u can get up to a whole one I got the money for." (R. Doc. 73 – 20, at 10.) Defendant responded, "Since I could last remember but it coo just gotta figure the price and who Im gonna fuck with." (R. Doc. 73 – 20, at 10.)

7

J.W. and defendant also exchanged text messages to assist in setting up the deal.  (R. Doc. 121, at 147 – 48; R. Doc. 73 – 19.)  In those text messages, J.W. asked defendant, "OK how much did you get your hands on?," "What's the bill gonna be," "How much do I need to go get cause I need to go it now cause I gotta have one of my parents get it." (R. Doc. 73 – 19, at 2 – 3.)  Defendant replied, "A whole one."  (R. Doc. 73 – 19, at 3.)  J.W. messaged defendant, "OK so u wanna meet at a grocery store or a restraunt or the casino?," "Let me know and I'll get an address for somewhere to put in your gps."  (R. Doc. 73 – 19, at 5.) Defendant replied "store or carwash."  (R. Doc. 73 – 19, at 5.)  J.W. messaged defendant, "400 south locust street dubuque.  It's a grocery store slash gas station slash car wash."  (R. Doc. 73 – 19, at 5 – 6.) Defendant replied, "Perfect see ya soon."  (R. Doc. 73 – 19, at 6.)  This address was for the Hy-Vee located at 400 S. Locust Street in Dubuque. (R. Doc. 121, at 146.)

Officers prepared J.W. for the controlled buy by searching his person and vehicle for any contraband or firearms.  (R. Doc. 121, at 147.)  Upon finding no illegal contraband or firearms, officers provided J.W. with $6,000 of pre-recorded currency and provided J.W. with a

8

body wire and covert camera to record audio and video of the transaction and to transmit a live feed to officers during the controlled buy. (R. Doc. 121, at 147.)

Officers conducted surveillance on J.W. as he drove in his truck to the Hy-Vee parking lot and parked at 400 South Locust Street. (R. Doc. 121, at 149.) Defendant eventually arrived at the parking lot, driving a car, and parked near J.W.'s truck. (R. Doc. 121, at 150.) Investigator Leitzen observed J.W. get out of his truck and get into the back seat of defendant's car. (R. Doc. 121, at 151.) Defendant then drove north into a car wash bay located at 350 S. Locust St., Dubuque. (R. Doc. 121, at 151.) Once defendant's car was in the car wash bay, Investigator Leitzen saw a woman get out of the front passenger seat and close the car wash bay door behind the vehicle. (R. Doc. 121, at 151.) A

A surveillance video from inside the car wash bay depicts defendant grabbing a black grocery bag from the passenger floorboard and providing it to J.W. in the back seat. (Ex. 17). The body wire video depicts J.W. receiving the black grocery bag and a conversation can be heard between defendant and J.W. in which defendant states the money

9

didn't look like bank money. (Ex. 13 at 46:35 – 49:35). J.W. replies he got it from an ATM. (Ex. 13 at 49:40).

After the transaction, defendant drove with J.W. and A.J. out of the car wash bay and back to the Hy-Vee parking lot, and he parked near the front of the Hy-Vee. (R. Doc. 121, at 152.) Once defendant and J.W. exited the car, officers moved in and arrested defendant. (R. Doc. 121, at 152.)

Investigator Leitzen met with J.W. immediately after defendant was apprehended and retrieved the black grocery bag containing the methamphetamine J.W. received from defendant for the $6,000. (R. Doc. 121, at 154.)

Investigator Leitzen obtained a warrant to search defendant's car. (R. Doc. 121, at 166.) When officers searched the car, they found the $6,000 of pre-recorded currency in the center console, a marijuana roach, and a Ruger 9mm pistol wrapped in a white T-shirt that was sticking out from underneath the driver's seat where defendant had been sitting. (R. Doc. 121, at 167.)

Agent Josh Mulnix with the Iowa Division of Narcotics Enforcement (DNE) conducted a post-*Miranda* interview with

10

defendant following his arrest, which was audio and video recorded. (R. Doc. 122, at 260; Ex. 10). Defendant admitted the guy in his car, namely J.W., was someone he knew, and they were "locked up together." (R. Doc. 122, at 261.) Defendant admitted he got the methamphetamine from a friend named Brian Smith in Des Moines and that he owed Smith $6,000. (R. Doc. 122, at 261.) Defendant told officers that the woman with him had nothing to do with it and he only told her they were going on a road trip. (R. Doc. 122, at 261.) When asked who gave the methamphetamine to J.W., defendant admitted "it was me" and "it was in a bag." (R. Doc. 122, at 261.)

Investigator Leitzen and Investigator Nicholas Schlosser conducted a second post-*Miranda* interview with defendant on December 13, 2019, that was also video and audio recorded. (R. Doc. 121, at 168; Ex. 12). Defendant again indicated he got the meth from Brian Smith in Des Moines. (R. Doc. 121, at 169.) Defendant denied knowing about the firearm. (R. Doc. 121, at 170.) When asked if the girl that was with him had anything to do with the gun, defendant replied that she did not put it there. (R. Doc. 121, at 170.) Defendant admitted the car was his grandparents' vehicle, he took it over, and it

11

became permanently his. (R. Doc. 121, at 170.) Defendant was asked if he could possess firearms and defendant replied that he could not because he was a felon. (R. Doc. 121, at 171.)

The methamphetamine from the black grocery bag was sent to the Iowa Division of Criminal Investigation (DCI) crime lab for a purity analysis and was determined to be 449.4 grams of actual (pure) methamphetamine. (R. Doc. 73 – 2.)

## B.    The Trial

At trial, the government called Investigator Leitzen, Agent Mulnix, and J.W. to testify. (R. Doc. 121, at 143; R. Doc. 122, at 256; R. Doc. 122, at 329.) The parties stipulated that the Ruger 9mm pistol met the definition of a firearm and was manufactured outside the State of Iowa. (R. Doc. 122, at 282 – 83.) The parties also stipulated that, as of December 12, 2019, defendant knew he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year. (R. Doc. 122, at 283.)

Agent Kelly Meggers with the Iowa DNE testified about methamphetamine, conducting drug investigations, how drug dealers operate, and firearms. (R. Doc. 121, at 212 – 22.) Agent Meggers

12

testified that firearms are used by drug dealers because they are tools of the drug trade and are used for protection. (R. Doc. 121, at 221 – 22.)

Jeff Miller, GIS Project Coordinator for Dubuque County, testified how he was able to ascertain a straight-line distance of 753 feet from the car wash, located at 350 South Locust Street, in which the meth deal in this case occurred, to the real property comprising of Cleveland Park, and it was 753 feet. (R. Doc. 122, at 431 – 40; R. Doc. 73 – 16). Investigator Leitzen testified that Cleveland Park was a public playground and had multiple items of playground equipment that would constitute three or more separate apparatus intended for the recreation of children, and pictures of the park were entered into evidence. (R. Doc. 121, at 172; R. Doc. 73 – 15.)

Defendant's prior Iowa conviction from March 2017, for possession of a controlled substance, methamphetamine, with intent to deliver at least 5 grams, was entered into evidence in the government's case-in-chief. (R. Doc 73 – 29.)

After the government rested its case-in-chief, Probation Officer Charity Klop with the Iowa Department of Corrections testified for defendant. (R. Doc 123, at 492.) She testified about "very briefly"

13

supervising defendant during his time on parole in December 2019. (R. Doc 123, at 493.) Officer Klop testified generally about how parolees are placed in facilities, what classes are available, methods she employs, the role of halfway houses, and the requirements and restrictions placed on persons admitted into these programs and facilities. (R. Doc 123, at 494 – 502.)

On cross-examination, Officer Klop testified that three days after taking over defendant's supervision on parole he self-admitted to using methamphetamine. (R. Doc 123, at 503.) She also testified that defendant voluntarily left his facility without permission and did not return on December 11, 2019. (R. Doc 123, at 503.) Officer Klop testified she was informed defendant was arrested in Dubuque County on new charges on December 12, 2019. (R. Doc. 123, at 503.)

In rebuttal, Investigator Leitzen testified about defendant's 2011 Iowa conviction for delivery of marijuana and a record of the conviction was entered into evidence. (R. Doc. 123, at 527 – 28; R. Doc. 73 – 21.)

Finally, in rebuttal, Investigator Brady Carney with the Des Moines Police Department testified about defendant's conviction of possession of a controlled substance, methamphetamine, with intent to

14

deliver at least 5 grams. (R. Doc. 123, at 531.) Investigator Carney testified, that on October 29, 2015, he was surveilling defendant and that defendant was then involved in a traffic stop. (R. Doc. 123, at 531 – 32.) Investigator Carney conducted a post-*Miranda* interview with defendant and defendant admitted he had been trafficking methamphetamine for approximately 6 months. (R. Doc. 123, at 532.) Officers found methamphetamine in the trunk of the vehicle defendant was driving. (R. Doc. 123, at 532.)

### C.    *The Jury Instructions*

On February 24, 2021, the parties submitted joint proposed jury instructions to the district court. (R. Doc. 53.) In those proposed jury instructions, each party had a proposed Jury Instruction No. 12, relating to the elements of Count 1. (R. Doc. 53, at 21 – 23.) The defense proposed Jury Instruction No. 12 included proposed language relating to his affirmative defense of entrapment. (R. Doc. 53, at 22.) Neither proposed Jury Instruction No. 12 included language relating to the allegation that the drug distribution charged in Count 1 occurred within 1,000 feet of a protected location. (R. Doc. 53, at 21 – 23.) Instead, the parties jointly proposed Jury Instruction No. 15, which

15

instructed the jury to make a finding on the protected location question if they found defendant guilty of Count 1.  (R. Doc. 53, at 27.)

The district court provided the parties with copies of the proposed jury instructions on the first day of trial.  (R. Doc. 121, at 112; R. Doc. 74.)  Jury Instruction No. 11 provided three elements for Count 1, and Jury Instruction No. 14 instructed the jury to make a finding on the protected location question.  (R. Doc. 74, at 14, 17.)  Prior to reading the instructions to the jury before the start of evidence, the district court asked defendant if he had any objections to the court's proposed jury instructions.  (R. Doc. 121, at 113.)  Defendant raised some objections to other instructions, but he did not object to either Jury Instruction No. 11 or Jury Instruction No. 14.  (R. Doc. 121, at 113.)

The district court decided to give the jury an instruction regarding entrapment, though it recognized that it was "borderline" whether the court should give such an instruction.  (R. Doc. 123, at 460.)

Appellate Case: 21-3830     Page: 24     Date Filed: 06/07/2022 Entry ID: 5164990

# SUMMARY OF THE ARGUMENT

Defendant contends the district court erred in providing jury instructions regarding Count 1. Defendant either waived or forfeited this argument because he did not object to the relevant jury instructions at trial. Further, the district court properly instructed the jury regarding Count 1.

Defendant contends he suffered ineffective assistance of counsel at trial. This Court should not entertain this argument on direct appeal. Furthermore, defendant's trial counsel was not ineffective.

Finally, defendant argues the district court committed procedural error during sentencing by determining defendant was a career offender and imposed a substantively unreasonable sentence. However, the district court properly found defendant was a career offender and imposed a substantively reasonable sentence.

Appellate Case: 21-3830    Page: 25    Date Filed: 06/07/2022 Entry ID: 5164990

**ARGUMENT**

## I. *The District Court Did Not Commit Reversible Error in Providing Instructions to the Jury*

For the first time on appeal, defendant argues that the district court erred in instructing the jury regarding Count 1. (Def. Brief at 7.) Defendant argues the district court erred specifically with its instruction relating to the protected location portion of Count 1. Defendant contends that the district court should have instructed the jury that Count 1 had four elements, including the three elements contained in Jury Instruction 11 and the separate interrogatory described in Jury Instruction 14. (Def. Brief at 7 – 11.)

### A. *Standard of Review*

This Court generally reviews challenges to jury instructions for an abuse of discretion. *United States v. Poitra*, 648 F.3d 884, 887 (8th Cir. 2011). If a defendant fails to timely object to an instruction, this Court reviews the instruction for plain error. *Id.* However, a defendant waives any objection to a jury instruction if the defendant expressly agrees to the instruction, and this Court need not review the objection to the instruction at all. *United States v. Spencer*, 998 F.3d 813, 818 (8th Cir. 2021).

18

"'To obtain relief under a plain-error standard of review, the party seeking relief must show that there was an error that is clear or obvious under current law, that affected the party's substantial rights, and that seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Ruzicka*, 988 F.3d 997, 1008 (8th Cir. 2021) (internal quotation marks omitted). To show that an error affected his substantial rights, a party must show a reasonable probability that the outcome of the proceeding would have been different but for the error. *See Molina-Martinez v. United States*, 578 U.S. 189, 136 S. Ct. 1338, 1343, 194 L.Ed.2d 444 (2016); *United States v. Callahan*, 800 F.3d 422, 425-26 (8th Cir. 2015)." *United States v. Spencer*, 998 F.3d 813, 819 (8th Cir. 2022).

**B.** **Defendant Waived Any Objection to the Jury Instructions on the Protected Location When He Agreed to the Instruction on This Issue Before Trial or, at the Least, Forfeited His Objection by Failing to Raise it During Trial**

Defendant expressly agreed to the treatment of the protected location in Jury Instructions 11 and 14, the jury instructions at issue for Count 1, before trial and, therefore, has waived any challenge to this aspect of the instructions on appeal. In the alternative, if the Court

19

finds defendant did not waive the objection, defendant forfeited the argument by failing to object to the instructions at trial, and this Court should review this argument for plain error.

> ### 1. *Defendant expressly agreed to the challenged jury instructions on the protected location and has waived any objection to the instructions*

Defendant expressly agreed to the portions of the jury instructions he now claims are erroneous and, therefore, has waived any objection on this issue. Defendant first expressly agreed to the treatment of the protected location in the parties' joint proposed jury instructions. There, while defendant's formulation of proposed Jury Instruction No. 12 was different from the government's, it differed only by adding an extra element to Count 1 related to entrapment. (R. Doc. 53, at 22.) Importantly, in the joint proposed jury instructions, defendant agreed to having the jury instruction regarding the protected location element in a separate instruction, namely joint proposed Instruction No. 15. (R. Doc. 53, at 27.) By doing so, defendant expressly agreed to this formulation of the jury instructions.

The district court adopted the parties' proposed formulation and numbered the instructions No. 11 and No. 14. (R. Doc. 74, at 14, 17.)

Appellate Case: 21-3830     Page: 28     Date Filed: 06/07/2022 Entry ID: 5164990

At trial, while the district court did not ask defendant specifically about Instructions No. 11 and No. 14, the district court did ask defendant if there was any further record defendant wanted to make regarding the instructions. (R. Doc. 121, at 113.) Defendant objected to some instructions but not to No. 11 or No. 14. (R. Doc. 121, at 113.) Defendant agreed to the treatment of the protected location in the instructions and has waived any objection on this issue.

> **2.    *Even if defendant did not waive his objection to the treatment of the protected location in the instructions, he forfeited his objection and the Court should review this argument only for plain error***

If the Court determines that defendant did not waive his objections to the jury instructions on the protected location, the Court should only review the instructions for plain error. Defendant had multiple opportunities to object to the instructions he now challenges, but he never objected.

First, on February 24, 2021, defendant agreed to the treatment of the protected location in the joint proposed jury instructions. (R. Doc 53.)

Appellate Case: 21-3830    Page: 29    Date Filed: 06/07/2022 Entry ID: 5164990

Second, on February 26, 2021, the district court published proposed instructions. (R. Doc. 56.) Those proposed instructions included the instructions defendant now challenges, though they were numbered Instruction Nos. 12 and 15 in the court's first version of the instructions. (R. Doc. 56, at 15, 18.) The parties had until March 3, 2021, to file objections to the proposed instructions. (R. Doc. 56.) Defendant filed objections to the instructions but did not object to Instruction No. 12 or No. 15. (R. Doc. 64.)

Third, defendant did not object to the instructions at trial. The district court gave defendant the opportunity to make additional record regarding the jury instructions. (R. Doc. 121, at 113.) Defendant referenced other previous objections but did not raise any objection to the treatment of the protected location. (R. Doc. 121, at 113.)

If the Court reviews the jury instructions on the protected location, it should only do so for plain error. *Poitra*, 648 F.3d at 887.

## C. *The District Court's Instructions Regarding Count 1 Were Not Plainly Erroneous*

If the Court reviews the protected location issue, the Court should find the district court's instructions were not plainly erroneous. First, there was no error. "[A]dequate jury instructions must, taken as a

22

whole adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government." *United States v. Pereyra-Gabino*, 563 F.3d 322, 382 (8th Cir. 2009) (internal quotation omitted). "There is no requirement that a trial court 'instruct with the specificity or in the language defense counsel desired.'" *United States v. Iron Eyes*, 367 F.3d 781, 785 (8th Cir. 2004) (quoting *United States v. Bartlett*, 856 F.2d 1071, 1083 (8th Cir. 1988). The instructions as given below adequately advised the jury of the essential elements of the offenses charged, the burden of proof, and how to consider the evidence.

Regarding Count 1, the distribution of methamphetamine near a protected location, defendant asserts the court should have instructed the offense with four elements instead of three elements with a special interrogatory regarding the location. (Def. Brief at 7 – 11.) This argument places form over substance. The district court's instructions and verdict forms required the jury to make its findings regarding the distribution and the location unanimously and beyond a reasonable doubt. (R. Doc. 74, at 14, 18; R. Doc. 76, at 1, 3.) Instruction Nos. 11 and 14 appropriately instructed the jury on Count 1.

Appellate Case: 21-3830    Page: 31    Date Filed: 06/07/2022 Entry ID: 5164990

Defendant argues that the district court constructively amended the indictment. (Def. Brief at 7.) Defendant cites *United States v. Gill*, 513 F.3d 836 (8th Cir. 2008), which stated that constructive amendment "'occurs when the essential elements of the offense set forth in the indictment are in effect altered by the prosecutor or the court after the grand jury has passed upon them.'" *Gill*, 513 F.3d at 849 (quoting *United States v. Barrios–Perez,* 317 F.3d 777, 779 (8th Cir. 2003)). However, the district court here did not alter the essential elements when it provided jury instructions that included the parties' agreed treatment of the protected location.

Second, any error was not clear or obvious. Defendant cites no cases stating that the location element must be in the same instruction as the marshaling instruction, and any alleged error was not clear or obvious under this Court's case law.

Third, any error did not affect defendant's substantial rights, as defendant has not shown a "reasonable probability that the outcome of the proceeding would have been different but for the error." Defendant argues that that the district court's jury instructions on Count 1 deprived him of his entrapment defense. (Def. Brief at 12 – 17.)

Appellate Case: 21-3830    Page: 32    Date Filed: 06/07/2022 Entry ID: 5164990

However, the district court provided an entrapment instruction even though it found it was a "borderline" case for entrapment. The evidence overwhelmingly established defendant's guilt, and the jury determined that defendant was not entrapped into committing the offenses charged.

Defendant was predisposed to commit the offenses charged. Defendant had sold methamphetamine previously, including selling meth to J.W. before J.W. was cooperating with the government. Defendant had multiple text conversations with J.W. in an attempt to arrange a sale, ultimately culminating in the sale on December 12, 2019. Defendant voluntarily drove from Des Moines to Dubuque to conduct the drug sale. Defendant specifically requested that the sale occur at a gas station or store and readily agreed to the location that J.W. suggested. Further, at no point did J.W. or any law enforcement officer suggest defendant bring a gun along with him on the drug sale. Defendant was predisposed to commit the crimes in this case and was not induced to do so.

Defendant cites no cases supporting his argument that an entrapment defense hinges on the location element in 21 U.S.C. § 860(a). He cites *United States v. Lard*, 734 F.2d 1290 (8th Cir. 1984),

Appellate Case: 21-3830    Page: 33    Date Filed: 06/07/2022 Entry ID: 5164990

where the Court stated, "The entrapment defense is based on the assumption that Congress did not intend to punish a defendant who has committed all the elements of a proscribed offense upon the inducement or instigation of government agents." *Lard*, 734 F.2d at 1292. The use of the language "all the elements" does not mean that an entrapment defense can succeed based on an allegation that the government entrapped a defendant with respect to one locational element.

## II. *This Court Should Not Entertain Defendant's Attempt to Raise an Ineffective Assistance of Counsel Claim on Appeal and Defendant Was Not Denied Effective Assistance of Counsel Regarding the Jury Instructions*

Defendant argues he was denied effective assistance of counsel during at trial because of his trial counsel's failure to object to the jury instructions related to Count 1. (Def. Brief at 18.) However, this Court should not entertain defendant's ineffective assistance of counsel claim on direct appeal because the record is not sufficiently developed to do so. Further, defendant was not denied effective assistance of counsel because the district court properly instructed the jury on Count 1, trial counsel's performance was not deficient, and defendant suffered no prejudice.

26

## A.    Standard of Review

This Court considers claims of ineffective assistance of counsel on direct appeal "only where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *United States v. Schwarte*, 645 F.3d 1022, 1034 (8th Cir. 2011) (internal citation and quotation omitted); *see also United States v. Sanchez-Gonzalez*, 643 F.3d 626, 628 (8th Cir. 2011) (explaining that this Court reviews ineffective assistance of counsel claims on direct appeal only in "exceptional cases").

In order to prevail on a claim of ineffective assistance of counsel, defendant would be required to show (1) counsel's performance was deficient and fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This court has "frequently recognized that the strategic and tactical decisions made by counsel, though they may appear unwise in hindsight, cannot serve as the basis for an ineffective assistance claim under Strickland." *Evans v. Luebbers*, 371 F.3d 438, 445 (8th Cir. 2004).

27

### B. This Court Should Deny Defendant's Ineffective Assistance of Counsel Claims

Defendant argues his counsel was ineffective for failing to object to jury instructions on Count 1. (Def. Brief at 18.) This Court should not entertain defendant's ineffective assistance of counsel claim when raised for the first time on direct appeal. If the Court decides to review these claims, then defendant should not prevail because his counsel's performance was not deficient and defendant suffered no prejudice.

### 1. This Court should not entertain defendant's ineffective assistance of counsel claims on appeal

Claims of ineffective assistance of counsel are best left for collateral proceedings. *United States v. Thompson*, 690 F.3d 977, 992 (8th Cir. 2012). "A defendant may only bring an ineffective assistance claims [sic] on direct appeal 'where the record has been fully developed, where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent.'" *Id.* (quoting *United States v. Hubbard*, 638 F.3d 866, 870 (8th Cir. 2011)). This Court has, "on occasion, reviewed ineffective assistance of counsel claims on direct appeal when the trial court was able, either through its own observations or via testimony from a hearing, to observe the

28

performance of defense counsel and draw relatively unbiased conclusions about the quality of that performance." *Id*. at 992. The record in this case is not fully developed, counsel's errors, if any, are not readily apparent, and it would not amount to a plain miscarriage of justice if the Court does not act on the claim.

### a.    *The record is not fully developed*

Defendant's claim of ineffective assistance of counsel relates to jury instructions he now challenges but that he did not object to at the time of trial. The record as to why defendant's counsel at trial did not pursue objections to the instructions at issue is not fully developed, and the matter is best left for any future collateral proceedings.

Counsel filed objections to the jury instructions in this case, indicating he was aware of his ability to object to the court's proposed instructions. (R. Doc. 64.) Counsel chose not to object to the instructions defendant now challenges. Counsel was justified in not objecting to these instructions because the court's instructions were proper. Importantly, however, even if an objection to the challenged instructions could have been lodged, the record is not fully developed as to why trial counsel chose not to pursue such objections.

29

### b. *If the Court chooses not to act, it will not be a plain miscarriage of justice*

This Court's decision not to entertain defendant's ineffective assistance of counsel claims would not amount to a plain miscarriage of justice. Defendant will still have the opportunity to raise ineffective assistance of counsel claims on collateral review, and this Court would not be denying him such an opportunity by not hearing the claims on direct appeal. Further, there was more than sufficient evidence in the record to support defendant's conviction and sentence, and it would not be a plain miscarriage of justice to refuse to entertain defendant's ineffective assistance of counsel claim now.

### c. *Counsel's error, if any, is not readily apparent*

Defendant's trial counsel did not make any readily apparent errors in the district court that would justify this Court hearing his ineffective assistance of counsel claims on direct appeal. As discussed above, the jury instructions in this case properly instructed the jury regarding Count 1 and the protected location. Even if defendant were now correct on a better formulation of the instruction for Count 1, it was not readily apparent at trial that the instructions were in error,

30

particularly when both parties and the district court had proposed the same instructions relating to Count 1. Therefore, there is no readily apparent error requiring this Court to hear defendant's ineffective assistance of counsel claims on direct appeal.

### 2. Defendant's ineffective assistance of counsel claim is without merit because defendant can show neither deficient performance nor prejudice

Generally, to prevail on an ineffective assistance of counsel theory, a defendant must establish: (1) his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would exercise under similar circumstances; and (2) the defendant was materially prejudiced by his attorney's ineffectiveness. *Strickland*, 466 at 694. Defendants bear a heavy burden when they attempt to prove an attorney was constitutionally deficient. *Sanders v. United States*, 341 F.3d 720, 721-22 (8th Cir. 2003). In scrutinizing counsel's performance, a court is to be highly deferential and make every effort to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689.

Counsel's performance is constitutionally deficient only if errors made by counsel were so serious that the defendant was denied the "counsel" guaranteed by the Sixth Amendment. *Id*. at 687. Counsel

31

generally is given broad latitude to make strategic and tactical choices regarding appropriate action to take or refrain from taking while acting in a representative capacity. There is a strong presumption that counsel's conduct falls within this broad latitude. *Id*. at 689.

In order to show prejudice from an alleged error on trial or appeal, a defendant must show that, but for the alleged error of counsel, the outcome of the trial or appeal would have been different. *Id*. at 694. The court need not determine whether a defendant's counsel acted reasonably if a defendant has failed to make a showing of prejudice. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). "Because the failure to establish prejudice can be dispositive of a case [a court] need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice." *Apfel*, 97 F.3d at 1076 (citing *Montanye v. United States*, 77 F.3d 226, 230 (8th Cir. 1996)).

Here, counsel's performance at trial was not deficient and defendant was not prejudiced. As discussed in detail above, the jury was provided appropriate instructions regarding Count 1 and found, beyond a reasonable doubt, that defendant was guilty of Count 1, including distributing drugs near a protected location. Trial counsel

32

ensured the jury was properly instructed and this performance was not deficient.

Further, as discussed above, even if trial counsel should have objected to the instructions regarding Count 1, failure to do so did not harm or prejudice defendant. The evidence of defendant's guilt and the lack of entrapment was overwhelming. A change in the jury instructions would not change the overwhelming evidence of defendant's guilt and would not have resulted in a different outcome at trial. Therefore, defendant was not prejudiced by his counsel's allegedly deficient performance.

### III. *The District Court Committed No Procedural Error and Did Not Impose a Substantively Unreasonable Sentence*

Defendant argues that the district court procedurally erred in finding that defendant was a career offender under USSG §4B1.1. (Def. Brief at 20). Defendant also argues that the district court erred in considering the sentencing guidelines to be mandatory. (Def. Brief at 24). Finally, defendant claims the court imposed a substantively unreasonable sentence. (Def. Brief 27).

Appellate Case: 21-3830    Page: 41    Date Filed: 06/07/2022 Entry ID: 5164990

## A.  Standard of Review

This Court reviews "the reasonableness of a defendant's sentence under a 'deferential abuse-of-discretion standard,' ensuring that the district court committed no significant procedural error and that the sentence is substantively reasonable." *United States v. Reynolds*, 643 F.3d 1130, 1134 (8th Cir. 2011) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)).  The Court reviews "the district court's application of the Guidelines de novo and its factual findings for clear error." *United States v. Blankenship*, 552 F.3d 703, 704 (8th Cir. 2009).

"When 'a defendant fails to timely object to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error.'" *United States v. Ford*, 987 F.3d 1210, 1215 (8th Cir. 2021) (quoting *United States v. Phelps*, 536 F.3d 862, 865 (8th Cir. 2008)).

> Under plain error review, we have discretion to reverse if (1) there is an "error"; (2) the error is "plain"; (3) the error affects the defendant's "substantial rights"; and (4) the error seriously affects the "fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732–37, 113 S. Ct. 1770, 123 L.Ed.2d 508 (1993) (quotations omitted).

*United States v. Lara-Ruiz*, 681 F.3d 914, 920 (8th Cir. 2012).

Appellate Case: 21-3830    Page: 42    Date Filed: 06/07/2022 Entry ID: 5164990

"After determining that a sentence is free from procedural error, we review the substantive reasonableness of sentences for an abuse of discretion." *United States v. Bordeaux*, 674 F.3d 1006, 1010 (8th Cir. 2012). A sentence imposed is within the advisory guideline range, is typically accord it a presumption of reasonableness. *United States v. Deegan*, 605 F.3d 625, 634 (8th Cir. 2010). This Court may not set aside a sentence merely because it would have sentenced defendant differently. *United States v. Kane*, 639 F.3d 1121, 1136 (8th Cir. 2011). "When a district court sentences a defendant below the advisory guidelines range, 'it is nearly inconceivable that the court abused its discretion in not varying downward still further.'" *United States v. Vera-Gutierrez*, 964 F.3d 733, 738 (8th Cir. 2020) (quoting *United States v. Anwar*, 880 F.3d 958, 973 (8th Cir. 2018)).

## B.   *The District Court Did Not Procedurally Err in Finding Defendant Was a Career Offender*

The presentence report in this matter scored defendant with a base offense level of 34 based on defendant's involvement with more than 150 grams but less than 500 grams of ice methamphetamine and the fact that the drug sale occurred near a protected location. (R. Doc. 102, at 9.) The PSR then determined that defendant was a career

35

offender because of his two prior controlled substance offenses. (R. Doc. 102, at 9.) Defendant disputed the career offender finding at sentencing. (R. Doc. 124, at 5.) Finding that *United States v. Henderson*, 11 F.4th 713 (8th Cir. 2021), was binding and governed in this case, the district court determined defendant was a career offender. (R. Doc. 124, at 12 – 13.)

"A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." USSG §4B1.1(a).

The district court properly found that defendant had two prior controlled substance offenses and was a career offender. First, defendant previously was convicted of delivery of a controlled substance, marijuana, in Polk County, Iowa. Second, defendant previously was convicted of possession of a controlled substance with intent to deliver, in Polk County, Iowa.

Appellate Case: 21-3830    Page: 44    Date Filed: 06/07/2022 Entry ID: 5164990

In *Henderson*, this Court decided it need not compare an Illinois statute of conviction to federal law, namely the Controlled Substances Act, in determining whether a prior conviction qualified as a controlled substance offense. *Henderson*, 713 at 717-19. The defendant in that case wanted the Court to replace the definition of a controlled substance in Illinois with the definition of a controlled substance under federal law. *Id*. at 717. The Court declined to do so, instead applying a "textual analysis" to conclude that a controlled substance offense includes substances regulated under the law of the state. *Id*. at 718. *Henderson* requires the Court to determine whether defendant's prior convictions are a controlled substance offenses as defined by the state.

Here, when defendant was convicted of delivery of a controlled substance, marijuana, the state of Iowa regulated the substance at issue and, therefore, it is a controlled substance offense under *Henderson*. Similarly, defendant's conviction for possession with intent to deliver a controlled substance, namely methamphetamine, involved a substance regulated by the state of Iowa and, therefore, is also a controlled substance offense. Therefore, defendant has two prior convictions for controlled substance offenses and, because he satisfies

Appellate Case: 21-3830    Page: 45    Date Filed: 06/07/2022 Entry ID: 5164990

the other two prongs, the district court properly found that he was a career offender and that his base offense level was 37.

## C. *The District Court Did Not Plainly Err by Considering the Sentencing Guidelines to be Mandatory*

Defendant argues that the district court erred by considering the sentencing guidelines regarding the methamphetamine quantity and resulting base offense level as mandatory. (Def. Brief at 26.) Defendant did not object to this issue at sentencing and this Court should review this issue only for plain error. The district court did not consider the guidelines mandatory and, in any event, the base offense level based on drug quantity did not matter because the district court properly calculated defendant's base offense level under the career offender guideline.

First, the district court did not consider the guidelines mandatory. Defendant argued that the district court should consider the 10-to-1 ice vs. mix methamphetamine discrepancy in sentencing defendant. (R. Doc. 124, at 17.) The district court rejected this argument. (R. Doc. 124, at 33 – 34.) Defendant now argues that the court rejecting this argument was tantamount to the district court concluding the sentencing guidelines were mandatory. (Def. Brief at 26 – 27.) The

38

district court rejected defendant's argument not because it took the guidelines to be mandatory, but because the district court disagreed with the argument relating to the "so-called ice disparity." (R. Doc. 124, at 33.) The district court noted it has rejected this argument many times before because the court concluded it was for the legislature, not the court, to determine how ice vs. mix methamphetamine is treated. (R. Doc. 124, at 33 – 34.) Importantly, the district court clearly demonstrated that it knew the sentencing guidelines were not mandatory because the district court ultimately varied downward 40 months from the bottom-of-the-range for other reasons. (R. Doc. 124, at 36 – 39.) The district court rejected defendant's argument on the merits, not because the court believed it was bound by the sentencing guidelines. There was no error.

Furthermore, the district court's rejection of the ice vs. mix methamphetamine discrepancy argument played no part in defendant's ultimate sentence. The district court calculated defendant's guideline range based on its correct finding that defendant was a career offender. The drug quantity and the allegedly disparate treatment between ice

39

and mix methamphetamine played no part in the calculation of defendant's guideline range.

## D. The Court's Sentence Was Not Substantively Unreasonable

Defendant claims his sentence was substantively unreasonable because the court's downward variance and sentence of 380 months' imprisonment resulted in a sentence greater than necessary. (Def. Brief at 27.)

At sentencing, the government sought a bottom-of-the-range sentence of 420 months' imprisonment. (R. Doc. 124, at 14.) Defendant moved for a downward variance and made various arguments in favor of the downward variance, including his disagreement with *Henderson* and the methamphetamine alleged disparity. (R. Doc. 124, at 16 – 24.) The district court granted a variance and sentenced defendant to 380 months' imprisonment. (R. Doc. 124, at 39.) This sentence was substantively reasonable.

After considering the arguments of the parties and defendant's allocution the court noted it considered all the factors in 18 U.S.C. § 3553(a) to determine a sentence "that is sufficient but not greater

40

than necessary to achieve the goals of sentencing." (R. Doc 124, at 26.)

The court found defendant:

- was dealing methamphetamine to make money;
- was carrying a gun at the time of the drug deal, which made him a danger to the community;
- distributed drugs near a protected location, but that the conduct here did not place anyone at the protected location in danger;
- has an addiction problem;
- graduated high school but had a limited work history;
- had a troubling criminal history, including nine adult convictions, three of which occurred while defendant was on probation;
- had been treated leniently by courts in the past;
- was not entitled to a downward variance because of *Henderson*;
- was not entitled to a downward variance because of the so-called meth disparity;
- was not involved in a criminal organization; and
- defendant's allocution showed remorse.

(R. Doc. 124, at 26 – 39.). The court then varied downward and

sentenced defendant to 380 months in prison. (R. Doc. 124, at 39.)

A within-the-guidelines range sentence is presumptively

reasonable. *United States v. Deegan*, 605 F.3d 625, 634 (8th Cir. 2010).

"[I]t will be the unusual case when we reverse a district court

sentence—whether within, above, or below the applicable Guidelines

range—as substantively unreasonable." *United States v. Feemster*, 572

F.3d 455, 464 (2009) (citation and quotation omitted); *see also United*

41

*States v. Keatings*, 787 F.3d 1197, 1203 (8th Cir. 2015) ("Appellate review is 'narrow and deferential' and reversal on the basis of substantive unreasonableness is 'unusual.'") (citation omitted). Here, the district court actually imposed a sentence below the guideline range and is entitled to due deference.

Defendant first argues that the alleged methamphetamine disparity renders defendant's sentence unreasonable. (Def. Brief at 28.) However, as discussed above, defendant's drug quantity did not play any role in calculating his advisory guidelines range. Further, the court expressly considered this argument and rejected it.

Defendant next argues that the district court erred by not giving more weight to defendant's argument that *Henderson* unfairly increased his sentence when he was not on notice that his prior controlled substance offenses would make him a career offender. (Def. Brief at 28 – 29.) The district court again considered this argument and rejected it. Defendant provides no reason why this decision makes his sentence substantively unreasonable, particularly where the district court varied downward for other reasons.

Appellate Case: 21-3830    Page: 50    Date Filed: 06/07/2022 Entry ID: 5164990

The district court did not abuse its discretion in imposing a below-the-guidelines sentence.

## CONCLUSION

For the above reasons, defendant's conviction and sentence should be affirmed.

Respectfully submitted,

TIMOTHY T. DUAX
Acting United States Attorney

By: */s/Anthony Morfitt*

ANTHONY MORFITT
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401
(319) 363-6333
(319) 363-1990 (fax)
Tony.morfitt@usdoj.gov

43

# CERTIFICATE OF FILING AND SERVICE

I certify that, on June 6, 2022, I electronically filed the foregoing brief with the Clerk for the Eighth Circuit Court of Appeals by using the CM/ECF system. The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using McAfee and the scan showed no virus.

I further certify that, on _____, 2022, I submitted ten paper copies of the brief to the Clerk of Court and one paper copy to each party separately represented or proceeding pro se.

TIMOTHY T. DUAX
Acting United States Attorney

By: /s/ *Linda Mersch*

_____
Legal Assistant

Copies to:
Murdoch Walker, II
Bingzi Hu
Lowther & Walker, LLC
101 Marietta Street NW, Suite 3325
Atlanta, GA 30303

Appellate Case: 21-3830    Page: 52    Date Filed: 06/07/2022 Entry ID: 5164990

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B).  The brief uses a proportional-spaced typeface, fourteen-point Century Schoolbook font. Based on a count under Microsoft Word for Windows, the brief contains 8,367 words, excluding the parts of the brief exempted by Rule 32(f).

TIMOTHY T. DUAX
Acting United States Attorney

By: /s/ *Anthony Morfitt*

_____

ANTHONY MORFITT
Assistant United States Attorney

45